## ATCHISON, T. & S. F. RY. CO. v. FIEDLER.

(Court of Civil Appeals of Texas. El Paso. May 1, 1913. On Motion for Rehearing, . May 29, 1913. Further Rehearing Denied June 19, 1913.)

1. CARRIERS (§ 318*) — PERSONAL INJURIES — SUFFICIENCY OF EVIDENCE.—INJURY.

Evidence in an express messenger's action for injuries *held* to show that the injury complained of was caused by the accident on defendant's train.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1270, 1307–1314; Dec. Dig. § 318.*]

2. DAMAGES (§ 130*)—EXCESSIVE DAMAGES—PERSONAL INJURIES.

In an express messenger's action for injuries, where the jury found that he was injured in his back and spine, a verdict of $2,000 would not be disturbed as being excessive.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 357–367, 370; Dec. Dig. § 130.*]

On Motion for Rehearing.

3. EVIDENCE (§ 461*)— PAROL EVIDENCE TO VARY WRITING—AMBIGUITY—RELEASE.

A writing executed by an express messenger in settlement of his claim against defendant railroad for personal injury releasing the company from the consequences of injury at A., and from all manner of actions, suits, debts, and sums of money, was uncertain as to what causes of actions were meant, so that parol evidence was admissible to establish the intention of the parties.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2129–2133; Dec. Dig. § 461.*]

Appeal from District Court, El Paso County; A. M. Walthall, Judge.

Action by E. E. Fiedler against the Atchison, Topeka & Santa Fé Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Turney & Burges, of El Paso, and Terry, Cavin & Mills, A. H. Culwell, and Jno. G. Gregg, all of Galveston, for appellant. Patterson, Wallace & Gardner, of El Paso, for appellee.

HARPER, C. J. This suit. was brought by appellee to recover of appellant damages for personal injuries, and resulted in a verdict for $2,000, from which this appeal is prosecuted.

[1] The evidence offered to sustain the claim tended to show that appellee was injured on May 30, 1909, and again on October 21, 1909, while working for Wells Fargo Express Company, handling baggage and express on appellant's train. On May 30, 1909, at Vaughn, a light engine ran against the train upon which appellee was riding with such force and violence as to knock him 20 to 30 feet, where he fell upon his back, injuring his spine and back, and causing a rupture. On October 21, 1909, while working for the same company upon appellant's train, a work train was negligently run into the train and the jar threw him down with such force as to skin his hands and knees.

The appellant complains that the court erred in refusing a new trial because the great preponderance of the testimony showed that the hernia complained of, and the only substantial injury appellee was then suffering from, was not caused by the accident on appellant's train. Appellee testified that he was in the act of pulling up trunks when the engine hit the train and knocked him backwards 20 to 25 feet, and injured his back, spine, and ruptured him. The baggage car was so injured that the train crew coupled it on behind the train, and took it into Albuquerque. That he was laid up so he could not do any heavy lifting all the balance of the year. "I did not carry the car into Albuquerque; another man took charge of the run." After he got into Albuquerque he walked about five blocks home. He never missed a single run; went out next day. He was not examined by any physician after either accident. "I first noticed the rupture about a week after the accident at Vaughn. I told the people under whom I worked that I was hurt in my back, spine, and hand. I filled out a statement, but did not know that I was ruptured until next day." Dr. Calnan testified: "I examined the plaintiff to see if he had any injuries. Found a rup-

ture on the right side, an inguinal rupture, which is a permanent injury, and will incapacitate him for hard labor. He also has tenderness in the spine and back. The tendency of such injuries is to get worse as he grows older. There is no way to fix the length of time a rupture has existed that I know of, and I could not tell anything about when it happened, except from what he told me. Operations can be performed which will practically do away with rupture.

[2] The third assignment complains that the verdict was grossly excessive because the only serious injury complained of by plaintiff was the rupture or hernia, and the testimony tended to show that it was caused by lifting heavy weights and straining by appellee. We do not find the statements made in this assignment borne out by the statement of facts; but, on the other hand, the evidence is that appellee is ruptured and has injury to his back and spine. The jury having passed upon the facts and found that appellee was injured as alleged, and fixed his damages at $2,000, we would not feel authorized to disturb the judgment.

The following written release was interposed by appellant as a bar to this action: "December 31, 1911. For and in full release, discharge and satisfaction of all claims, demands or causes of action, arising from or growing out of all injuries sustained by me of every character and description, whether now apparent or which may hereafter develop, while mail clerk on train No. 9 of the Atchison, Topeka & S. F. Ry. Co. at or near Abajo, New Mex., on or about the 29 day of Dec. 1911, as well as any and all claims of whatever kind or character I may have against the said railway company prior hereto and up to and including the date hereof. Settled in full for $75.00. Received of the Atchison, Topeka and Santa Fé Railway Company seventy-five & no/100 dollars in full payment of above claim. In consideration of the payment of said sum of money, I, Edwin E. Fiedler, of Albuquerque, N. M., hereby remise, release and forever discharge said company of and from all manner of actions, suits, debts and sums of money, * * * whatsoever in law or in equity, which I have ever had or now have against said company by reason of any matter, cause or thing whatever, whether the same arose upon contract or upon tort. I have read the above voucher, receipt or release, and understand the same. * * * Note: Claimant will please read the foregoing carefully, and having done so, if fully understood, will please insert in own handwriting in the space before the words 'In Testimony Whereof,' the following: 'I have read the above voucher, receipt and release, and fully understand the same.'" Appellant paid the $75. Appellee pleaded false and fraudulent representations upon the part of the agent of the appellant, and further alleged that the receipt and release only applied to

the claim mentioned therein, to wit, the injuries suffered by him in the accident at Abajo, N. M., and that he signed the same without reading it.

The testimony in respect to the execution of the instrument is as follows:

Appellee: "There was nobody present when I signed this paper but Mr. Riehl, claim agent for the Sante Fé Company. He said to me, 'How much do you think you ought to have for the injuries at Abajo the other night?' I says, 'How much do you think I ought to have?' He says, 'About $50; how would that do?' I says, 'I don't know.' He said, 'State your figures, and I will write out a check for it right away.' I says, 'How will $75 do?' He said, 'All right.' He drew out a blank and filled it out, and said, 'Here sign this to show that I have settled the claim of the accident that happened at Abajo a few nights ago.' He says: 'You will have to write in the words down here, "I have read the above voucher, receipt and release, and understand the same,"' so I wrote it as he told me. Not a word was said by either of us about this suit. I did not read the release at that time; I relied on what he told me. The suit now on trial was pending at that time."

J. A. Riehl, witness for defendant, testified: "I made a settlement with Mr. Fiedler on the 30th of December, 1911. There was no fraud or misrepresentation on my part in behalf of the company in settling this release. I did not read it to plaintiff; he read the release in my presence. I then asked him to note the instructions on the bottom; which he did, and signed it. The only claim that we discussed there was the accident at Abajo, and nothing was said about the accident sued for in this case. I considered that I had taken a release from Mr. Fiedler for what the release called for. I knew at the time that this suit was pending. I had in mind getting a total release from him for everything he had against the railway company up to that time. I thought this matter was dead and had been dropped long ago. I knew it was in the courts but thought Mr. Fiedler had called it all off. If I was going to settle the accident mentioned in your petition at that time I would not have had that form of release. At the time of taking this release I had in mind making settlement for the injuries Mr. Fiedler received as mail clerk, and taking a release in full. That release covers all injuries of every kind and character prior thereto."

It will be seen that there is a conflict in the evidence as to what occurred when the release was executed. The testimony upon the subject is very much abbreviated, but enough is quoted above to show the trend of the evidence upon the question of release and settlement, which was submitted by the trial judge as follows, to wit: "You will first determine the issues of defendant's liability under its plea of release and settlement,

and on this issue you are instructed: That the written contract of release and settlement pleaded by defendant and read to you in evidence would be sufficient in law to completely absolve and release the defendant from any and all liability for any damages growing out of any injury plaintiff may have sustained on either or both of the days alleged by him in his pleadings, and you will find for the defendant on said issue, and you will not inquire further into said cause of action unless you further find from the preponderance of the evidence that at the time of the execution of said release the plaintiff and defendant's agent representing defendant understood in making said settlement that the contract of settlement and release embraced only the specific accident described in said receipt as having occurred on the 29th day of December, 1911, and that neither said agent nor plaintiff agreed, contracted, or understood to settle the claims for damage involved in this suit, and the burden to show that plaintiff and defendant's agent did not intend to include the claim involved in this suit in said settlement is on the plaintiff. Now, if you find from the evidence that it was not within the contemplation or agreement of the plaintiff and defendant's agent to include the claim of plaintiff for damages involved in this suit in the said release, you will find for the plaintiff and against the defendant on the issue of release and settlement. However, should you not so find, you will find for the defendant, and if you find for the defendant on the issue of release and settlement you will not inquire further, but will return a verdict for the defendant. Should you find for plaintiff on the issues of release and settlement, you are instructed as in other paragraphs of this charge." It will be seen that the charge above quoted submits the question of "release and settlement" alone upon the theory of the intention of the parties at the time the plaintiff accepted the $75.00 and signed the instrument—that is, whether the parties intended to settle for any accident except the one at Abajo—while the plaintiff pleaded fraud and misrepresentation upon the part of defendant's agent by which plaintiff was induced to sign. There is no evidence in the record of misrepresentation or fraud as an inducement to plaintiff below to sign the release. In Houston & Texas Central Ry. Co. v. Burns, 63 S. W. 1035, the court says: "We know of no authority or principle of law to warrant the proposition * * * that one executing a written instrument is not bound by it merely because it was executed by him through mistake, believing that it did not contain what was plainly expressed therein, unless the mistake be a mutual one [which appellee has not pleaded in this case]; but, to the contrary, something more than mistake and ignorance as to the contents of a written instrument on the part of the maker must be shown before he can avoid it. If such mistake and ignorance be

due to the false and deceitful representations of the adverse party, relief will be granted." The release in question includes "all manner of actions, suits, debts, and sums of money * * * whatsoever in law and equity, which I have ever had against said company by reason of any matter, cause or thing whatever, whether the same arose upon contract or upon tort," and it is written therein by appellee: "I have read the above voucher, receipt or release and understand the same." In the absence of fraud and misrepresentation, the appellee cannot now avoid the effect of the writing executed by him by now claiming that he did not intend to do that which he clearly did by executing the instrument.

For the reason assigned, the cause must be reversed and rendered.

McKENZIE, J., did not sit in this case.

### On Motion for Rehearing.

We have concluded that our construction (of the release pleaded) on the original hearing of this cause, to the effect that it was a release of the plaintiff's (present) cause of action, is not in line with the majority and weight of authority as declared by other courts.

[3] The language of the release is clearly sufficient to embrace all claims, demands, and causes of action which plaintiff had at that time; and, having concluded upon the first consideration of the case that the instrument was not ambiguous nor had defendant pleaded and proven fraud or mistake, we therefore held that oral testimony was not admissible to explain the intention of the parties, but upon more careful consideration of the proposition, in the light of additional authorities cited by appellee in motion for rehearing, we conclude that the fact that the release in question in its first recital, to wit, "release the Railway Company from the consequences of injury at Abajo," is followed by the general and sweeping one, "all manner of actions, suits, debts and sums of money * * * whatever in law or equity," makes it uncertain as to what causes of action were meant, therefore parol evidence in such cases is admissible to establish the intention of the parties at the time; for, if the parties had intended to release all actions, why not mention the others as well as the one at Abajo, N. M.? The trial court therefore properly admitted the testimony and properly submitted the question to the jury. Quebe v. Railway Co., 98 Tex. 6, 81 S. W. 20, 66 L. R. A. 734, 4 Ann. Cas. 545; E. P. & S. E. Ry. Co. v. Darr, 93 S. W. 170; T. & P. Ry. Co. v. Dashiell, 198 U. S. 528, 25 Sup. Ct. 737, 49 L. Ed. 1150; Jackson v. Stackhouse, 1 Cow. (N. Y.) 122, 13 Am. Dec. 514; Todd v. Mitchell, 168 Ill. 199, 48 N. E. 35; Bassett v. Lawrence, 193 Ill. 494, 61 N. E. 1098; Jeffreys v. Railway Co., 127 N. C. 377,

37 S. E. 515; Railway Co. v. Artist, 60 Fed. 365, 9 C. C. A. 14, 23 L. R. A. 581.

The motion for rehearing will therefore be granted, and the judgment of the lower court affirmed.