RANDOLPH et al. v. WITHERSPOON OIL CO. et al. (No. 7613.)*

(Court of Civil Appeals of Texas. San Antonio. Nov. 6, 1926. Rehearing Denied March 2, 1927.)

1. Mines and minerals ⬙109—In action for breach of contract to drill oil well, evidence as to fraud in inducement and waiver of right to rescind held sufficient for jury.

In action for breach of contract to drill oil well, evidence of fraud of plaintiff corporation's president in inducing contract, and as to waiver by defendant of right to rescind or complain of fraud, *held* sufficient to go to jury, and to render peremptorily directing verdict for plaintiffs error.

2. Contracts ⬙270(2)—Party intending to disaffirm contract for fraud must act promptly on discovery thereof.

As rule, party to contract, intending to disaffirm for fraud of his adversary, must act promptly on discovery thereof.

3. Contracts ⬙270(3)—If there is any evidence from which jury could find party to contract, complaining of fraud, acted diligently in disaffirming, jury question, is raised.

Issue of diligence in disaffirming contract on discovery of fraud must be determined from peculiar facts in each case, and, if there is any evidence from which jury could find that complaining party acted diligently, it becomes jury question.

4. Fraud ⬙35—Though party by lack of diligence loses right to disaffirm contract for fraud, he has action for damages until barred.

Even though by lack of diligence party loses right to disaffirm contract for fraud, he has action for damages, which exists until barred by limitations.

On Motion for Rehearing.

5. Mines and minerals ⬙109—Bond securing performance of contract to drill oil well held not to secure payment of rent for drilling rig.

Bond securing payment for labor and material in drilling oil well and return of drilling rig in good condition did not require surety to indemnify against principal's default in payment of rental for rig.

Appeal from District Court, Bexar County; S. G. Tayloe, Judge.

Action by the Witherspoon Oil Company and others against R. B. Randolph and another, in which certain parties intervened. From a judgment for plaintiffs and the interveners, defendants appeal. Affirmed in part, and reversed in part, and remanded.

Barrett & Barrett and Douglas & Carter, all of San Antonio, for appellants.

Gaines, Quin, Harley & Gaines, Eskridge & Williams, and Powell & Green, all of San Antonio, and W. A. Hadden, of Weslaco, for appellees.

SMITH, J. After drilling an oil well to a depth of 2,710 feet, upon an 80-acre lease owned by it in Medina county, the Witherspoon Oil Company entered into a contract with R. B. Randolph to complete the well to a depth of 3,200 feet, unless paying production was reached at a lesser depth. In consideration of his agreement to complete the well, Randolph was to receive from the oil company an assignment of one-half interest in the well and in the lease upon which the well was located, and a one-third interest in the remaining leases owned by the company in the vicinity of the well. It was stipulated in the agreement that for a rental of $750 a month Randolph should have the use of the rig and equipment owned by the company and theretofore used by it in the operation, and that, upon termination of the contract, he should deliver the outfit back to the company in as good condition as it was in when he took possession of it, usual wear and tear excepted. To secure performance of the contract by Randolph, the company required the latter to execute a bond in the sum of $5,000, with the Employers' Casualty Company as surety. The bond was made payable to the oil company and others who might perform labor or furnish material to Randolph in the project. It was stipulated in the contract that Randolph should begin drilling the well "immediately, and proceed therewith with

---
⬙For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted April 27, 1927.

reasonable diligence until completed." The contract was entered into early in September, 1924. Randolph promptly entered upon the drilling operation, but made slow progress, and abandoned the project on December 15, after having drilled only 80 feet in the well. He paid the first month's rental on the drilling outfit, but no more, and when he abandoned the operation he was in substantial arrears with his laborers and materialmen.

The oil company filed this suit against Randolph and the casualty company, as surety, to recover damages for breach of the drilling contract, for rental of the drilling outfit up to April 26, 1925, and for damages to it. The company alleged that it had fully complied with its obligations in the contract, including the assignment to Randolph of a third interest in the leases owned by it, and a one-half interest in the lease on which the well was located, but that Randolph had breached the contract by failing to diligently prosecute the drilling of the well to completion. The unpaid laborers and materialmen intervened in the suit and prayed for judgment against both Randolph and the surety on his bond. The court directed a verdict for plaintiffs and interveners against both defendants, and rendered judgment in accordance with the directed verdict. Randolph and the Employers' Casualty Company have appealed.

[1] Randolph set up, among other defenses, that he was induced to enter into the contract through the fraud of the oil company, alleging that the president of the company falsely represented to him that there was a sufficient supply of water available, and arranged for to complete the drilling operation undertaken in the contract by Randolph, whereas such supply of water was wholly inadequate for such purpose, and delayed and finally rendered impossible the completion of the well as provided for in said contract. These allegations were supported by testimony, and appellee did not seek to controvert it, but urged in defense thereto that, by failing to promptly disaffirm the contract after ascertaining the inadequacy of the water supply, appellant had waived his right to rescind the contract, or complain of the fraud. We are of the opinion that the evidence upon the issues of fraud and waiver was such as to require the submission of those issues to the jury, and that therefore the court erred in peremptorily directing a verdict for appellee thereon.

[2-4] Appellee correctly asserts the rule that, when a party to a contract intends to disaffirm on account of the fraud of his adversary, he must act promptly upon discovery of the fraud. But the issue of diligence must be determined from the peculiar facts in each case, and, where there is any evidence from which a jury could find from all the circumstances of the case that the complaining party acted diligently, then it becomes a jury question. And, it should be added, even though by lack of diligence the complaining party loses his right to disaffirm, he still has his action for damages occasioned by the fraud, and this remedy exists until barred by limitations. In this case there is evidence that Randolph's experiments in ascertaining the dependability of the water supply carried him into a period of threats of suits for damages and for cancellation of his contract, which soon culminated in an injunction against him, and the whole uncertainty was crystalized into this action. We are not prepared to uphold the directed verdict against all the circumstances of the case.

The evidence was uncontroverted that the oil company had never assigned to Randolph a half interest in the well or in the lease upon which the well is located, although it was expressly stipulated in the contract that such assignment should be made as a part of the consideration passing to Randolph in the transaction. The contract was silent as to when this transfer should be executed and delivered to Randolph. The assignments of adjacent leases provided for were made promptly, and the evidence strongly indicates that Witherspoon, president of the oil company, was entirely willing, when he made the other transfers, to assign the interest in the well and lease on which the well is located, and thought he had in fact made such assignment. But he did not do so then or thereafter, has never tendered such assignment, and still refrains from doing so, although as a basis for complaining of Randolph's breach of the contract he asserts full compliance therewith on the part of his company. Appellee seeks to defeat appellants' right to complain of this breach because they did not plead it below. On the other hand, appellee itself expressly pleaded that it had fully complied with the contract, even to the extent of executing and delivering this particular assignment, and it is probable that this pleading had the effect of raising the issue for both parties. We will not undertake to decide this question of pleading, however, as it will probably be obviated upon another trial.

No complaint is made of the judgment in favor of the interveners, and, as to them, the judgment will be affirmed, but, as to all the other parties, the judgment must be reversed and the cause remanded.

Affirmed in part, and in part reversed and remanded.

### On Motion for Rehearing.

[5] It should be determined on this appeal whether or not the surety on appellant Randolph's bond is liable upon that bond for the rent required in the contract to be paid by appellant to the oil company for the use of the latter's drilling rig.

It was provided in the contract that appellant should take over and complete the well the oil company had started by drilling it to a specified depth, if necessary, and that for this operation appellant was to furnish his own expense, labor, material, and equipment, except the drilling rig, which was to be supplied by the oil company, and for which appellant agreed to pay the oil company a monthly rental of $750 at the end of each 30 days; "the final payment to be made on completion of the well as provided for herein." It was also provided in the contract that:

"Party of the first part agrees to furnish and deliver to the party of the second part a good and sufficient bond made by some surety company satisfactory to the party of the second part, in the principal sum of five thousand ($5,000.00) dollars, conditioned upon and guaranteeing that party of the first part will comply with the provisions of this contract and drill said well to a depth of 3,200 feet, unless oil or gas, in paying quantities, is found at a lesser depth, and that party of the first part will complete said well in a proper and adequate manner, and also that party of the first part will deliver back to party of the second part the drilling rig leased by it to party of the first part, including entire equipment and drill stem furnished, in as good condition as it was in at the time of delivery to the party of the first part, reasonable wear and tear allowed, and that party of the first part will replace all machinery, equipment, pipe, or tools, lost or damaged by him, or place same in a condition satisfactory to the party of the second part."

In pursuance of this provision appellant Randolph, as principal, and appellant casualty company, as surety, executed a bond payable to the oil company. In this bond it was recited that Randolph and the oil company had entered into a contract, "which is attached to and made a part hereof," and "by the terms of which said Randolph is to take over and complete a certain well being drilled for oil to a depth of 3,200 feet; * * *" that "whereas it is desired that the faithful performance of the aforementioned contract and agreement by the said R. B. Randolph be secured to the Witherspoon Oil Company, and that payment be secured to all persons who may perform labor or furnish material incident to the performance thereof." The obligation of the bond was described as follows:

"Now, therefore, we, R. B. Randolph, as principal, and the undersigned, Employers' Casualty Company, as surety, acknowledge ourselves held and firmly bound jointly and severally unto the Witherspoon Oil Company, as well as to all other persons who may perform labor or furnish material on such contract or agreement incident to the performance thereof in the sum of five thousand ($5,000.00) dollars, and that said R. B. Randolph will deliver back to the Witherspoon Oil Company the drilling rig leased by it to him in accordance with the terms and conditions of said contract.

"The condition of this obligation is such that, if R. B. Randolph shall truly and faithfully perform said contract and agreement, then this obligation shall be null and void, otherwise to remain in full force and effect."

Randolph defaulted in the payment of a portion of the rig rental, and the question is, Is the surety liable under the terms of the bond for the unpaid rental upon the drilling rig? It is obvious that the bond does not expressly provide for such liability. The obligation of Randolph to drill the well as provided in the contract, and pay for all labor and material used by him in the operation, are mentioned in the bond, but the rig rental is not. The express obligation in the bond is limited to the payment for labor and material and the return to the obligee of the drilling rig in good condition, and the condition of the obligation is that Randolph "shall truly and faithfully perform said contract and agreement."

In deference to the rule that sureties are only chargeable according to the strict terms of their obligations, we hold that the bond did not require the surety to indemnify the oil company against the principal's default in the payment of the rig rental. The bond did not expressly provide for such liability, and none will be implied by intendment. If the obligee in the bond could resort to implication in order to hold the surety, the remedy would be defeated in this case by express inclusion in the bond of particular obligations which by implication exclude those not mentioned.

Appellee's motion for rehearing is overruled.