### WITHERSPOON OIL CO. v. RANDOLPH et al.   (No. 986—4843.)

Commission of Appeals of Texas.   Section A. Oct. 12, 1927.

**1. Mines and minerals ☞109—Acquisition of knowledge of falsity in representation inducing contract to put contractor to choice of rescinding or affirming contract.**

Acquisition of knowledge of falsity in representation that existing water well would furnish adequate supply of water for purpose of drilling oil well, which representation defendant claimed induced contract for drilling well, put defendant contractor to choice of rescinding and demanding status quo ante or of affirming contract.

**2. Fraud ☞35—One affirming contract, upon discovering fraud, may waive or preserve right of action for damages.**

One affirming contract, upon discovering falsity in representations inducing contract, may waive or preserve right of action for damages.

**3. Fraud ☞35—Performance by party injured by fraud inducing contract does not, of itself, establish intent to waive right of action for damages.**

Continued performance by party injured by fraud in procurement of contract after knowledge of such fraud does not, of itself, establish intent to waive right of action for damages.

**4. Mines and minerals ☞109—Contractor's conduct, upon discovery of alleged fraud inducing contract to drill oil well, showed affirmance of contract.**

Contractor's conduct, on and immediately subsequent to discovery of alleged fraud inducing contract to drill oil well, in continuing his efforts and incurring expenses showed affirmance of contract.

**5. Mines and minerals ☞109—Contractor's declination to perform contract to drill oil well after certain date cut off defense of fraud in procurement of contract and claim for damages.**

Contractor's declination to perform or tender performance of contract to drill oil well after certain date, after he had affirmed same upon discovering fraud in procurement, cut off defense of fraud in procurement of contract as well as claim for damages.

**6. Mines and minerals ☞109—Purpose and intent mutual to oil company and contractor as shown by contract was communicated to surety and become tripartite where copy of contract was made part of bond.**

Purpose and intent regarding security for rental of tools, mutual to oil company and one contracting to complete oil well as shown by stipulations, was communicated to surety and became tripartite where contract was evidenced in writing and copy was attached to and made part of bond.

**7. Mines and minerals ☞109—Language of bond held to mean that surety bound itself to oil company in certain sum in accordance with terms of contract of principal to complete oil well.**

Language of bond, providing that surety bound itself in sum of $5,000 and that R., the principal, would deliver back to oil company rig leased by it to him in accordance with terms and conditions of said contract, held to mean that surety bound itself in sum mentioned in accordance with terms and conditions of principal's contract to drill oil well.

**8. Bonds ☞48—Doctrine of last antecedent does not so operate as to defeat intention otherwise manifested in bond.**

Doctrine of last antecedent, sometimes useful in finding meaning of relative words, does not operate so as to defeat intention otherwise manifested in bond.

**9. Principal and surety ☞59—Surety's obligation is not to be reduced by construction.**

Meaning of language of surety for hire is to be found with same rules as those by which like words are measured in other contracts, and his obligation is not to be reduced by construction.

**10. Mines and minerals ☞109—Bond securing performance of contract with oil company to drill oil well held to secure payment of rent to oil company for drilling rig.**

Bond securing performance of contract with oil company to drill oil well, in view of situation of parties and purposes in mind disclosed in paper and words of, what was called "obliga-

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

tion," *held* to secure payment to oil company of rent for drilling rig furnished by oil company.

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Action by the Witherspoon Oil Company against R. B. Randolph and another, in which certain parties intervened. Judgment for plaintiffs was affirmed in part, and in part reversed and remanded, by the Court of Civil Appeals (291 S. W. 587), and plaintiffs bring error. Judgment of Court of Civil Appeals reversed, and that of district court affirmed.

Gaines, Quin, Harley & Gaines, of San Antonio, for plaintiffs in error.

Barrett & Barrett, of San Antonio, for Employers' Casualty Co.

Douglas & Carter, of San Antonio, for defendant in error.

NICKELS, J. We refer to the opinion of the honorable Court of Civil Appeals (291 S. W. 587) for a general statement of the case.

Randolph and his surety averred that Witherspoon, president of the company, during the negotiations represented that "an existing water well near the 80-acre lease upon which the 2,710-foot well was located (about 2,500 feet away) would furnish an adequate supply of water for the purpose," it being "mutually understood that a plentiful supply of water was indispensable," and that Randolph "knowing that said Witherspoon had occasion to have information upon the subject, believed said representation and relied thereon" and was thus induced to make the contract This representation with its alleged falsity and consequent injury was presented as such fraud as made a defense against the company's claim for tool rental and, also, a basis for reconvention for damages.

We merely assume that fraud is predicable upon a representation such as that alleged and under the conditions by which its making was circumstanced. The water well "existed," and the representation presented Witherspoon's estimate of its then present and future capacity. Randolph was greatly experienced in this class of operations. He "went to work" (September 11th) "and drilled about 35 feet in 15 or 18 days and, then, there was no water supply." Such is his own testimony, and it is made plain that prior to October 1st he acquired knowledge that Witherspoon's estimate was incorrect. His efforts continued until December 15th, when, according to the conclusion of the Court of Civil Appeals, he "abandoned the project." There is evidence to support that conclusion, and it is not attacked in the Supreme Court. In the period intervening making of the contract and "abandonment of the project," Randolph got assignments of leasehold interests, etc., in consideration of his obligations, and some of these he sold; he discovered, also, a stratum in the well which, he thought, indicated presence of oil in paying quantities, and to this belief he held at the time of the trial.

There is no controversy, or basis for a controversy, about rental being due in the amount of the judgment unless the fraud in procurement alleged was a defense.

[1-3] Acquisition of knowledge of falsity in the representation put Randolph to a choice and a subchoice. He could rescind and demand the status quo ante, or he could affirm the contract; if he decided to affirm, he might waive, or he might preserve his right of action for damages. Intent to that end is a characteristic of waiver of the latter right in case of affirmance; and whatever may be the rule touching conduct in respect to agreements wholly executory (see Kingman v. Stoddard, 29 C. C. A. 413, 85 F. 740; Simon v. Goodyear Metallic Rubber Shoe Co., 44 C. C. A. 612, 105 F. 573, 52 L. R. A. 745; McDonough v. Williams, 77 Ark. 261, 92 S. W. 783, 8 L. R. A. [N. S.] 452, 7 Ann. Cas. 276 and 12 R. C. L. 413), continued performance by the injured party does not, of itself, establish that intent, else there could not be affirmance and preservation of the right of defense or to damages. Vide Grabenheimer v. L. & H. Blum, 63 Tex. 369, 374, 375; Kennedy v. Bender, 104 Tex. 149, 135 S. W. 524; Harris v. Egger, 141 C. C. A. 219, 226 F. 389; annotation, L. R. A. 1918A, 106 et seq.

[4] Randolph's conduct upon and immediately subsequent to discovery of the fraud is not subject to a construction other than of affirmance, for he was an experienced operator with knowledge of the importance of an adequate water supply and of the inadequacy of that available, and he proceeded to incur expenses as well as to reap actual benefits and to pursue benefits which seemed to him to be in good prospect. Hence he elected as between rescission and affirmance. See Wells v. Houston, 23 Tex. Civ. App. 629, 57 S. W. 584; Kingman v. Stoddard; Simon v. Goodyear Metallic Rubber Shoe Co., supra.

[5] On the record, the matter of his intent to waive his right to damages or the defense would be issuable, if important. But it is not important, since he "abandoned the project" December 15th. This is so because there is no right to successive elections, and the rule which allows preservation of the right to damages or the right to defend on account of inducive fraud is grounded in that true affirmance which requires the injured party to stand to and perform (at least offer to perform) his obligations. 14 A. & E. Ency. of Law, 171. Randolph's declination to perform or tender performance on and subsequent to December 15th, in our opinion, cut off this defense as well as his claim for damages. As stated, the matter of that declination is not re-examinable here.

[6]· The Court of Civil Appeals ruled that tool rental has no protection in the bond. In the contract made by Randolph and· Witherspoon Oil Company it was stipulated inter alia that: (a) The company should let to him and he should use certain tools, etc., "for the purpose of completing the well," and "for such time as necessary to so drill or complete said well," and that he should pay for that use $750 at the "end of each 30 days," etc.; (b) he should "furnish and deliver" to the company "a good and sufficient bond made by some surety company * * * in the principal sum of $5,000, conditioned upon and guaranteeing that" he would "comply with the provisions of this contract and drill said well to a depth of 3,200 feet," etc. Pursuant to those stipulations Randolph "furnished and delivered" and the company accepted the bond in question. The stipulations, then, afford an index to the purpose and intent mutual to Randolph and the company. That purpose and intent was communicated to the surety and became tripartite, for the contract was evidenced in writing and a copy was "attached to and made a part of" the bond—it is so nominated in a preamble—and therein a reason for execution is given in these words:

"It is desired that the faithful performance of the aforementioned contract and agreement by said R. B. Randolph be secured to the Witherspoon Oil Company. * * * "

The situation of the parties, then, required and the purpose in view was security for rental, as for performance of additional obligations, because, else, "faithful performance of the aforementioned contract" could not be "secured to Witherspoon Oil Company."

[7, 8] "Therefore," the principal and surety next wrote, "we * * * acknowledge ourselves held and firmly bound jointly and severally unto the Witherspoon Oil Company * * * in the principal sum of $5,000 and that said R. B. Randolph will deliver back to the Witherspoon Oil Company the drilling rig leased by it to him in accordance with the terms and conditions of said contract." This language includes redundancy, or is characterized by ambiguity, or, still else, manifests an obligation restricted to $5,000 securing performance of the other agreement plus an obligation (unrestricted in amount) securing observance of the special term of the contract for redelivery of the tools in proper condition. Literally, and with the aid of grammatical elementals, it may be read: ·

"We acknowledge ourselves held and firmly bound jointly and severally unto the Witherspoon Oil Company in the principal sum of $5,-000 in accordance with the terms and conditions of said contract, *and* that said R. B. Randolph will deliver back to Witherspoon Oil Company the drilling rig leased by it to him in accordance with the terms and conditions of said contract,"

—for the conjunctive is used without terms or punctuation signifying that the words "in accordance with the terms and conditions of said contract" do not relate to each requirement as named. The doctrine of the "last antecedent," sometimes useful in finding the meaning of relative words, does not so operate as to defeat intention otherwise manifested.

Having started out to do a certain thing, and then having done by words a thing of questionable mien, the principal and surety thus declared the contingency whose occurrence would operate their release:

"The condition of this obligation is such that if R. B. Randolph shall truly and faithfully perform said contract and agreement, then this obligation shall be null and void.

Otherwise, it was said, the obligation should "remain in full force and effect." Randolph, obviously, could not "truly and faithfully perform said contract and agreement" without payment of the rentals; hence the last expression of the parties· is to the effect that their obligation should not come to an end, but, contrarily, should be and remain in effect upon default in that regard, even though other things required might have been done.

[9] It may be that the liability of a surety for hire is strictissimi juris despite lack· of the reason which makes an accommodation surety a favorite of the law; but even so, the meaning of his language is to be found with the same rules as those by which like words are measured in other contracts, and his obligation is not to be reduced (any more than enlarged) by construction. ' American Bonding Co. v. Pueblo Inv. Co., 80 C. C. A. 97, 150 F. 17, 24, 25, 9 L. R. A. (N. S.) 557, 10 Ann. Cas. 357; 21 R. C. L. 977, 978. Here as elsewhere:

"The court should, as far as possible, put itself in the place of the parties when their minds met upon the terms of the agreement, and then from a consideration of the writing itself, its purpose, and the circumstances which conditioned its making endeavor to ascertain what they intended to agree to do—upon what sense or meaning of the terms they used their minds actually met. * * * That intention must be deduced not from specific provisions or fragmentary parts of the instrument, but from the entire agreement, because the intent is not evidenced by any part or provision of it, nor by the instrument without any part or provision, but by every part and term so construed as to be consistent with every other part and with the entire contract. * * * The actual intent of the parties when thus ascertained must prevail over the dry words, inapt expressions, and careless recitations in the contract, unless that intention is directly contrary to the plain sense of the binding words of the agreement." United States Fidelity & Guaranty Co. v. Board of Commissioners, 76 C. C. A. 114, 118, 145 F. ·144, 148.

See, also, 6 R. C. L. "Contracts," §§ 228–332, 234, 236, 239.

[10] The situation of the parties and the purpose in mind, disclosed in the paper and the words of what is called the "obligation," permissively interpreted in the light of their context, are, we believe, in harmony in bringing rentals within protection of the bond.

Accordingly, we recommend reversal of the judgment of the Court of Civil Appeals and affirmance of the judgment of the district court.

CURETON, C. J. Judgment of the Court of Civil Appeals reversed and that of the district court affirmed, as recommended by the Commission of Appeals.