## SOUTHWEST NAT. BANK v. EMPLOYERS' INDEMNITY CORPORATION, et al.
### (No. 1121–5051.)

Commission of Appeals of Texas, Section A. Jan. 2, 1929.

190

NICKELS, J. We refer to the opinion of the Court of Civil Appeals (299 S. W. 676) for a general statement of the case.

Writ of error was allowed Southwest National Bank upon asserted harmony in allegata and probata and to Employers' Indemnity Corporation upon assignments of the bond's noninclusion of indemnity for attorneys' fees, etc.

1. We are in agreement with the Court of Civil Appeals upon the matter of the indemnity bond's coverage of expenses, etc., incurred by way of attorneys' fees in defense of the federal court suit. What we say in this connection is by way of supplement and in response to argument ably pressed upon us by counsel for Employers' Indemnity Corporation et al.

Indemnity nominated in the bond is for "all loss, damage, liability, expense or costs, by reason or on account of the aforesaid suit, or the cause of action involved therein." Of the expressions made some general observations are appropriate.

(a) The suit referred to is the federal court suit then long since filed, whose "cause of action," of course, pre-existed. The time and manner of incidence of stipulated "loss," "expense," etc., are restricted only to being "by reason or on account" of the "suit" or its "cause of action."

(b) Subject only to the limitation just mentioned, a broadly generic term is employed to declare each subject; and in order to expand if possible the comprehensive meaning, there is included with each general term the word "all."

The contention of noncoverage of expenses incurred as attorney's fees has a double aspect.

■ (a) It is said that the bond uses words importing a different character of expenditures in each reference or that it does so in some respects and more general words used (in other respects) ought, therefore, be restricted to expenditures of like classes. Application of what is called the "expressio unius" and "ejusdem generis" rules, it is claimed, exclude attorneys' fees. But, as noted, generic terms are used throughout and of import broad enough to include attorneys' fees—e. g., a contract for attorneys' services would create a "liability," and payment for those services would be an "expense." It is "all" (and not a "part") of the "liability," "expense," etc., that is stipulated.

(b) The suit referred to was filed and the attorneys employed long before the bond was executed. A substantial part of the services for which the "fees" were paid were performed before execution of the bond, and some of them were performed in securing the bond itself. Hence it is presented, indemnity (in any event) was not provided for "expenses" incurred for those services, and since the

Thomas & Storey and Touchstone, Wight, Gormley & Price, all of Dallas, for plaintiff in error.

Collins & Houston and Wallace & Taylor, all of Dallas, for defendants in error.

proof of amount of "expense" and of reasonableness of amount is confined to the attorneys' services in whole, the judgment for $5,000 lacks warrant. The obligation as expressed, however, is for indemnity for "all expense," etc., "by reason or on account" (a) "of the aforesaid suit" or (b) "the cause of action involved therein." As noted above, the time range of incidence of "liability," "expense," etc., is from origination to ending of the "cause of action" involved in the "aforesaid suit," and the only limitation of manner of incidence is that the "liability" must arise or expenditure be made "by reason or on account" of the "suit" or the "cause of action." Except for existence of the claim (i. e., "cause of action") and its assertion in "the aforesaid suit," none of the services for which attorneys' fees were contracted and paid would have been needed or performed, and, in consequence, the whole of the expense (since it was reasonable in amount) falls within the terms of the obligation for indemnity.

(c) Upon execution of the bond the obligor employed attorneys to defend the suit then pending against the obligee, and thereafter the defense was conducted by those attorneys assisted by the attorneys previously employed by the obligee. In this fact (along with the asserted fact that services of obligee's attorneys were not required after employment of those of the obligor) there is rested a claim that "fees" paid obligee's attorneys are without the indemnity stipulated. To the point are cited Martin-Brown Co. v. Auld (Tex. Civ. App.) 34 S. W. 1050, writ denied, and National Surety Co. v. Roth, 208 Mo. App. 277, 232 S. W. 737. But, as already stated, the obligation here is broad enough to include indemnity for the attorneys' fees paid, and that situation differentiates the issues made from those involved in any of the cases cited. In Martin-Brown Co. v. Auld the bond provided indemnity for costs, charges, etc., which might arise "in consequence of the levy of * * * execution" and not, as here, "by reason or on account" of a suit then pending and its "cause of action." If the Missouri case was correctly decided, the contract there involved provided indemnity only for such attorneys' fees as might be paid, etc., under impulsion of circumstances; whereas in the present case (as shown already) the agreement is broad enough to include attorneys' fees previously incurred "by reason or on account" of a pending suit or its "cause of action," if it covers them at all, and thus the idea of payment in necessity is precluded.

2. What has been said has reference to the $5,000 attorneys' fees incurred by the obligee in respect to the federal court suit and "cause of action" therein.

■ Southwest National Bank sued for and recovered $500 for attorneys' fees in the present suit. The obligation of the bond, broad as it has been shown to be, does not extend to this charge. "Liability" or "expenses" for attorneys' services are for enforcement of the obligation itself, and were not incurred "by reason or on account" of the federal court suit or its "cause of action." Martin-Brown Co. v. Auld, supra; Kelsay Lbr. Co. v. Rotsky (Tex. Civ. App.) 178 S. W. 837.

3. Touching the matter involved in the assignments of Southwest National Bank, we disagree with the honorable Court of Civil Appeals, but only in respect to application of the principles announced. Our view is that on the proof made the judgment is sustainable (to the extent of the $5,000 allowed to indemnify for the "fees" paid attorneys in the federal court suit), as permitting recovery upon an "express contract" of assumption made by Employers' Indemnity Corporation. Reasons for this view will be stated.

The relevant averment is stated in full in the opinion on rehearing filed by the Court of Civil Appeals. While the contract there declared upon is called one of "reinsurance," it is said to include the obligation of the "bond."

We are inclined to the belief that an inference arises on the face of the contract of "assumption" (set out in part in the opinion of the Court of Civil Appeals), and to the effect that the parties intended that all liabilities of the Western company should be assumed by the Employers' company, and, hence, that the obligation now in question is one of those whose performance was expressly undertaken.

■ However that may be, broadly descriptive terms were employed to state the matter of the assumptional obligation. "Insurance" is a word of comprehensive and varied meaning. It may and often does signify indemnity only. At least when it is used without qualifying words its meaning does not exclude such indemnity as was contracted for in the so-called "bond" in question. United States Fid. & Guar. Co. v. First Nat. Bank of Dundee, 233 Ill. 475, 84 N. E. 670, 672; People v. Rose, 174 Ill. 310, 51 N. E. 246, 44 L. R. A. 124; American Surety Co. v. Folk, 124 Tenn. 139, 135 S. W. 778, Ann. Cas. 1912D, 1024, and cases therein cited. "Insurance" written by a "casualty" company may under our laws (e. g., article 4942A, par. (k), Vernon's Sayles' Tex. Civ. Stat. 1914; article 4989, R. S. 1925) include "casualties" of the kinds generally signified by the term (see 11 C. J. 30), and extend to "any other casualty or insurance risk specified in the articles of incorporation which may lawfully be made the subject of insurance * * * excepting fire and life insurance," etc. And "policy" may describe the contract whatever the subject of indemnity and whatever the contingencies, etc., provided. 31 Cyc. 904, 905. In terms the assumptional contract is made to cover "all lines of insurance" theretofore pursued by the Western company.

Too, "each and every other item of liability

listed on page 5" of the "annual statement" mentioned (i. e., every "item" other than "outstanding policies") is in words embraced within the expressed agreement. In the second "whereas" reciting the general object then in mind (see Witherspoon Oil Co. v. Randolph [Tex. Com. App.] 298 S. W. 520), it is declared that the Western "desires * * * to liquidate its business," and to that end "to relieve itself of its entire liabilities as computed and shown upon said page 5." And in paragraph "First" "capital paid up * * * Three Hundred Thousand Dollars" is expressly "saved and excepted" from the "items listed" on said "page 5," this being the only exception made. If, when read with the statutes (e. g., article 4942g, par. "sixth," Vernon's Sayles' Tex. Civ. Stat. 1914; article 4995, R. S. 1925), defining the duties of "casualty" companies in respect to "annual statements," etc., these recitals of the contract do not, of themselves and prima facie, amount to a declaration that all liabilities ("business") of whatever kind (and, hence, inclusive of the "bond" in question), are in fact "listed" on said "page 5," they certainly do not plainly negative that as a fact. Of course, "page 5" is the primary evidence of its contents, but it is not in the record.

[redacted] Use of broadly descriptive terms in respect to subject-matter and latitudinarian expression of the agreement itself justified resort to extrinsic proof (in absence, at least, of objection made and preserved on the point) in the effort to ascertain what things were included in the agreement declared and as declared sued upon. Smith v. T. & N. O. R. R. Co., 101 Tex. 405, 409, 108 S. W. 819; Schaub v. Dallas Brewing Co., 80 Tex. 634, 16 S. W. 429; A., T. & S. F. Ry. Co. v. Fiedler (Tex. Civ. App.) 158 S. W. 265, 267, writ denied. Amongst the relevant subjects of proof to that end is the practical construction given the contract. G., H. & S. A. Ry. Co. v. Johnson, 74 Tex. 256, 263, 11 S. W. 1113. Permissible inquiry in that line did not assume right to contradict or vary terms of the instrument or have for its object establishment of an implied agreement; on the contrary, the purpose was to ascertain what was within the agreement expressly declared as basis for enforcement of the contract thus made.

[redacted] Mr. Carpenter, who was in a position to know, testified inter alia:

"The Western Indemnity Company in 1921 reinsured its business with Employers Indemnity Corporation. * * * At the time the Western Indemnity Company reinsured its business, it turned over its assets to the reinsuring company, which was the Employers Indemnity Corporation. * * * This" (i. e., the instrument of March 31, 1921) "is the reinsurance agreement. * * * It was signed by me as President * * * of the Western Indemnity Company and by Mr. Trimble as President of the Employers Indemnity Corporation. * * * In pursuance to the agreement, the Western Indemnity Company turned over all its assets of every kind and character to the Employers Indemnity Corporation and the transfer was complete and the Western Indemnity Company went out of business and the Employers Indemnity Corporation assumed its business and is now conducting it * * * whatever there was to conduct it conducted it; it became the sole owner of all the assets of the Western Indemnity Company and the Western Casualty & Guaranty Company and Western Indemnity Company ceased to function. * * * The Western Indemnity Company was a casualty company; it wrote automobile policies and health and accident and general casualty business and some bonds and as such it accumulated some assets in the way of property."

While Mr. Carpenter used the word "reinsured" in general description of the terms of the agreement and the word "reinsurance" in description of the contract itself, it is manifest that he did not use those words in their more technical senses (see California State Life Ins. Co. v. Kring [Tex. Civ. App.] 208 S. W. 372; 33 C. J. 43, 44), for the instrument then before him and about which he was speaking evidences a direct assumption of the liabilities covered therein.

And, according to his words, it was the "business" and not a part thereof which was taken over ("assumed") "in pursuance to the agreement"; thereupon his company "went out of business," not partially so; thereafter, the Employers' company "conducted whatever of that business there was to be conducted"; the "writing of general casualty insurance and some bonds" (perforce, those written and outstanding) was the "business" in which the Western company had been and was engaged.

In our opinion, in the situation made by the comprehensive terms of the instrument and the testimony of Mr. Carpenter about what was done in "pursuance" thereof, the primary trier of fact issues or the judge of law issues (with Mr. Carpenter's testimony uncontradicted) was entitled to say that the obligation of the "bond" sued upon has a place amongst those "expressly assumed."

4. We recommend that the judgments of the district court and the Court of Civil Appeals be reversed, and that judgment be rendered in favor of Southwest National Bank of Dallas, Tex., and against Western Casualty & Guaranty Company, Western Indemnity Company, and Employers' Indemnity Corporation in the sum of $5,000, with interest thereon from May 13, 1924, and that the costs incurred in the Court of Civil Appeals and in the Supreme Court be taxed equally as between Southwest National Bank of Dallas, Tex., on the one hand, and Western Casualty & Guaranty Company, Western Indemnity Company, and Employers' Indemnity Corporation on the other.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals both reversed, and judgment rendered for the plaintiff in error, as recommended by the Commission of Appeals.