**J. W. MUNDY et al., Appellants,**

v.

**KNUTSON CONSTRUCTION COMPANY et al., Appellees.**

No. 12713.

Court of Civil Appeals of Texas.

Galveston.

Oct. 20, 1955.

Rehearing Denied Nov. 10, 1955.

Fulbright, Crooker, Freeman, Bates & Jaworski, Newton Gresham and Quentin Bates, Houston, for appellants Mundy and Newman.

Madison Rayburn, Houston, for appellant Ben H. Moore.

Cutrer & Cook, Lewis W. Cutrer, and W. Lawrence Cook, Jr., Vinson, Elkins, Weems & Searls and B. Jeff Crane, Jr., Houston, for appellees.

CODY, Justice.

This appeal is concerned with what to all intents and purposes are two suits. To avoid unnecessary confusion we will first limit this opinion to the first suit and, after disposing of that, we will take up the second one. The undisputed facts in the first suit were these:

The Knutson Construction Company— the trade-name of Severin Knutson—contracted with the Harris County Water Control and Improvement District for certain sanitary sewer lines and other appropriate facilities, as set out in said contract, a copy of which was attached to Knutson's petition. Knutson thereafter subcontracted the performance of the entire contract to J. W. Mundy Construction Company—the trade-name of J. W. Mundy—and in connection therewith Mundy furnished Knutson a performance bond with L. Gene Newman as surety thereon. After Mundy had completed the greater part of the work, he became insolvent so Knutson had to finish the work.

After he had finished the work, Knutson brought suit against Mundy and Mundy's surety, Newman, to recover damages in the sums specified in Knutson's petition. So far as is now material on this appeal, Knutson sought to recover the sum of $100 a day liquidated damages for 174 days, or $17,400 liquidated damages, for delay, purportedly under the terms of the subcontract. Knutson also claimed the right to recover reasonable attorney's fees.

Mundy and his surety, Newman, so far as material on appeal, plead a waiver by Knutson of all liquidated damages, and he further denied any right in Knutson to recover attorney's fees. The case was submitted to the jury upon special issues and it is sufficient to state that the court rendered judgment in favor of Knutson and against Mundy and Newman for the sum of $21,850.98. We take the following statement from the brief of Mundy and Newman, which is not challenged by Knutson:

"In arriving at such net figure in favor of Knutson, the trial court after taking into account all other charges, credits and offsets determined either by the jury verdict or the undisputed evidence, charged Mundy and Newman with the following items of which complaint is made on this appeal:

"(a) The sum of $17,400.00, based upon 174 days delay in the completion of the contract, which called for liquidated damages for delay at the rate of $100.00 per day.

"(b) The sum of $6,500.00 as attorney's fees to Knutson for the prosecution of the case at bar.

"It is, of course, obvious that had these two items not been charged

against Mundy and Newman, then instead of Knutson recovering $21,850.-98, Mundy would have been entitled to judgment against Knutson for $2,049.-02."

Mundy and Newman predicate their appeal upon five formal points of error, complaining (1) of the court's rejection of special issue No. 9A as answered by the jury, (2) of the court's rejection of special issue No. 9B as answered by the jury, (3) of the court's action in awarding Knutson $17,400 as liquidated damages, (4) of the court's action in awarding attorney's fees to Knutson because Mundy and Newman had not contracted with Knutson for payment of any attorney's fees, and (5) of the court's action in rendering judgment for Knutson for $21,850.98 instead of rendering judgment for Mundy on his cross-action against Knutson for $2,049.02.

We overrule Mundy's and Newman's first three points.

Based upon the provision of the sub-contract, Knutson sued Mundy and Newman to recover $100 a day as liquidated damages for each day in excess of 300 calendar days that the work remained unfinished, which was asserted to be 174 days. Mundy and Newman plead that the delay in completing the work over the 300 day period was the fault of Knutson and the District, and further plead that Knutson agreed during the course of the work that no penalty for delay would be exacted from Mundy if the District exacted no liquidated damages from him, Knutson.

Due to rain and the condition brought about by the work in which Mundy was installing the sewer line, the streets became impassable and the District, at a meeting, where Mundy and Randerson, the duly authorized agent of Knutson, were present, requested Mundy to hold up all further work until the streets could dry out and become passable. Mundy said that he would do so provided Knutson would not hold him for the delay which the Board of the District was requesting; and Randerson agreed that if the District did not undertake to hold Knutson liable for liquidated damages for such delay, then Knutson would not undertake to make any charge against Mundy for such damages.

Relative to the agreement made in the presence of the Board, the following questions were asked of Mr. Mundy and he made the following answers:

"Q. What was the reason or the necessity, or rather, why was the Board asking you to shut down and repair those streets? A. Well, why did they want them repaired?

"Q. What was the situation existing that caused them to ask you to do that? A. Well, the streets were in such condition they didn't want any more streets disturbed until we could get on up to putting the streets in shape to where the people could go up and down them in good shape.

    *     *     *     *     *     *

"Q. Now, Mr. Randerson was asking you to shut down? A. Yes, sir.

"Q. And you were not willing to shut down without some assurance? A. Without assurance of that; yes, sir.

"Q. Let me ask you this, did Mr. Randerson tell you, if I understood you correctly, that if you would shut down that there would be no liquidated damages charged against you unless the Board charged him, Randerson, for damages for the delay? A. Yes, sir.

"Q. All right, you did shut down? A. Yes, sir; I did.

"Q. How long did you shut down? A. Just a little over three weeks; I think it was a couple of days over three weeks.

    *     *     *     *     *     *

"Q. I wish you would state just what took place at that meeting between you and Mr. Randerson, the Engineers and the Board, with respect to the matter of your shutting down,

and with respect to anything Mr. Randerson stated he would do if you would shut down.

\*   \*   \*   \*   \*   \*

"A. One thing that was brought up at that meeting was the Engineers and the Owners wanted me to shut down and let the street conditions get better and catch up with some of our clean-up, but to more or less let the streets dry out so we would not be opening up any more streets and the streets wouldn't be in any worse condition, and I wanted to be sure I wouldn't get into any more trouble about it, and I brought up the subject of liquidated damages that I might be charged if we did shut down, and we discussed that and it went on and I asked Mr. Randerson to definitely state whether he would or would not, and he kept saying he had no intentions of it, and I kept on and I said, 'May I or may I not?' He said: 'If the Board charges us damages, of course, if we are charged any damages, we will have to pass them on to you', and I said that would be all right.

"Q. Did you shut down, relying on his agreement with you? A. Yes, sir.

"Q. And did the Board ever charge him any liquidated damages? A. No, sir.

"Q. Did they charge them any kind of delay damages? A. No, sir.

"Q. That you know of? A. No, sir."

In the light of the evidence of the foregoing character, special issue No. 9A and the answer thereto must be considered. Said special issue reads as follows:

■ "Do you find from a preponderance of the evidence that R. S. Randerson agreed with J. W. Mundy that if he, J. W. Mundy, would close the job down pursuant to the request of the Water Control Board, the Knutson Construction Company would not charge J. W. Mundy any liquidated damages whatever unless the Board should charge Knutson Construction Company damages for such delay?"

which the jury answered in the affirmative. The jury could, in our opinion, have only considered that said special issue was making inquiry only about the waiver of liquidated damages caused by the delay incident to getting the streets in passable condition. The amount of this delay, as testified to by Mundy, was 23 days. In no event would the evidence be sufficient to support a finding that Knutson agreed to waive all liquidated damages from whatever causes. At no time was any waiver of liquidated damages, except for the cause heretofore mentioned, discussed and this discussion was before the Board and the delay requested by the Board. Certainly the agreement to waive damages for that particular cause could not be stretched to become a waiver of liquidated damages for delay due to other causes. 7 Tex.Jur. 588.

Special issue 9B is only subsidiary to special issue 9A and need not be considered. The court allowed Mundy and Newman an offset of $2,300 (or 23 days) against 174 days, or $17,400.

■ As stated above in their fourth point, Mundy and Newman contend that they had not contracted with Knutson for the payment of attorney's fees. We overrule the point. So far as is here material the bond sued on by Knutson provides "* * * shall repay said Knutson Construction Company all costs and expenses said Knutson Construction Company may incur in the prosecution of any suit or suits which they may maintain against the principal (i. e., Mundy) on account of any breaches of said contract or of this bond."

■■ It is true, of course, that in Texas "unless provided for by statute or by contract between the parties, attorneys' fees incurred by a party to litigation are not recoverable against his adversary either in an action in tort or a suit upon a contract." Wm. Cameron & Company v. American Surety Company of N. Y., Tex.Com.App., 55

S.W.2d 1032, 1035. In the case just quoted from there is not the slightest intimation that the court intended to depart from the established rules of construction of contracts or to depart from the rule relative to construing provisions for attorney's fees which it held was in harmony with the rule as laid down in most of the other states. As was stated in Milwaukee Mechanics Ins. Co. v. Davis, 5 Cir., 198 F.2d 441, 444, 445, " 'The fundamental question to be determined in the legal construction of all contracts is, what was the real intention of the parties?' " It is the universal rule that the real intention of the parties to the contract must be determined from its terms as expressed between the parties.

In the Cameron case, supra, the owner of a newly constructed house was compelled to defend against claims which were sought to be established as liens thereagainst. The contractor had executed a bond to the owner which contained this language: that the contractor "shall fully indemnify and save harmless the Owner from all cost and damage which he may suffer  *  *  *" by reason of the failure of the contractor to perform the contract and satisfy all claims and demands for the same. The court held that the words "cost and damage" as used in the bond sued upon did not include attorney's fees which the owner had incurred in defending against claims sought to be attached against his house as liens. It will be noted that there was no express undertaking there on the part of the contractor that the owner should recover all costs and expenses which he might incur in defending suits seeking to affix liens against his property. The contractor would hardly be so reckless as to make any such contract. But in the present case it was expressly provided that Knutson should recover all costs and expenses which he might incur in the prosecution of a suit against the principal because of any breaches of contract. We think we are safe in stating that it would not occur to anyone but a lawyer that such language did not cover attorney's fees incurred in a suit prosecuted against Mundy for breaches of his contract. We are not here dealing with language which must be given a construction contrary to the apparent intention of the language used such as is true of the rule in Shelley's case. The law is not bound to construe the language under consideration in any purely Pickwickian sense, but to the contrary we are free to determine the intention of the parties as they have expressed it in the bond. Judge Key, in Cameron v. Barcus, 31 Tex.Civ.App. 46, 71 S.W. 423, 425, felt free to construe the words " 'any and all damages, costs, charges, or expenses incurred by the insurance company in resisting the plaintiff's claim' " as covering attorney's fees. While there is no writ history on the case just quoted, no one can doubt the high standing of Judge Key's opinions.

Again, in Southwest National Bank v. Employers' Indemnity Corporation, 12 S.W.2d 189, 190, the Commission of Appeals held that the following language in the bond: " ' *  *  * all loss, damage, liability, expense or costs, by reason or on account of aforesaid suit, or the cause of action involved therein' " covered attorney's fees. This bond was between laymen and they could have only understood therefrom that the language did cover attorney's fees.

We overrule Mundy's and Newman's fifth point, which in effect presents the same point presented under their first, second and third points.

This brings us to the second cause of action.

The second cause of action to be determined on this appeal consists of an intervention by Ben H. Moore, an insurance man. He furnished Mundy insurance policies covering workmen's compensation, public liability and property damage. After Mundy became insolvent and indeed after Knutson took over and finished the job, Moore brought suit against Mundy, Knutson and against Newman, Mundy's surety, to recover payment of the balance of the premiums which he alleged remained unpaid in the sum of $2,167.73. Indeed, he set up in his pleading a suit to recover said premiums as a verified open account

under Texas Rules of Civil Procedure, Rule 185 and attached a sworn account covering what he stated to be the insurance premiums due him primarily from Mundy.

Mundy not only did not file a sworn denial of the justness of the account, but in his pleadings admitted the justness thereof. Judgment was rendered against Mundy on the amount of the premiums so alleged to be due in the sum of $2,167.73.

Moore undertook to hold Knutson liable by reason of the terms of the contract between Knutson and the District. He also undertook to hold Knutson liable by reason of an oral agreement made by Knutson with him and the jury found that said oral agreement was in fact made.

Moore does not contend that the surety on Knutson's bond was liable for the unpaid premiums.

Moore in his pleadings also sued Newman as being liable on the surety bond which Newman executed insuring performance by Mundy.

Knutson denied liability under his bond or otherwise, whereas Newman admitted that the terms of his surety bond were broad enough to make him liable in case Moore proved up that Mundy actually owed him the $2,167.73, or any definite amount of insurance premiums. The view we take of the second suit is that Moore failed, as a matter of law, to prove that Mundy owed him $2,167.73 for insurance premiums or owed him any definite sum in that connection. And that consequently Moore was not entitled to recover said sum or any definite sum from Knutson or Newman. For this reason it is unnecessary to set out the contract or the bond which Moore contends made Knutson and Newman liable to him for said premiums.

Moore is in error in his contention that Rule 185, T.R.C.P., relating to suits on open accounts has any application so as to require Knutson or Newman to file a sworn denial in order to attack the justness of the account as sworn to in his petition. This because neither Knutson nor Newman was a party to the transaction between Mundy and Moore relating to the insurance. 1 Tex.Jur. 45, page 342; Crowe v. Union Automobile Insurance Co., Tex.Civ. App., 79 S.W.2d 168, 171 (writ dismissed).

The evidence shows without dispute that the insurance coverage furnished Mundy by Moore was for the period from November 8, 1947, to November 8, 1948; and the evidence further shows without dispute that during such year Mundy worked on five other jobs in addition to the job he had sub-contracted from Knutson, though Mundy testified that he had completed all other jobs prior to June 1, 1948, and that he was paid up with Moore at that date. Nevertheless, both Mundy and Moore testified that the charges of $509.90 and $184.82 of January 29, 1949, were charges which were made as a result of an annual audit for the insurance company whereby the auditor went back to the beginning date of the insurance policies on November 8, 1947, and assessed the two additional premiums on the basis of errors of Mundy in the classification of his employees during such policy year. There was no evidence showing how these additional premiums should have been allocated to the job we are here dealing with.

Without further extending this opinion, it is sufficient to state that under the proof it was impossible to have rendered judgment for any definite sum as to the premiums remaining unpaid on the job here in question.

The points presented by Moore are overruled and the judgment of the trial court is in all things affirmed.

Affirmed.