ORTIZ OIL COMPANY V. ADOLPH A. GEYER ET AL.

No. 7693. Decided February 4, 1942.
Rehearing overruled March 4, 1942.
(159 S. W., 2d Series, 494.)

*T. R. Boone, John Davenport, Leslie Humphrey* and *J. E. Hall,* all of Wichita Falls, for plaintiff in error.

The Court of Civil Appeals erroneously overruled the finding of the jury as to the value of the excess oil and by applying posted price paid for all produced and saved within the allowable fixed by the Railroad Commission as the measure of damages to plaintiff. Williams & Stevens v. Belo, 41 S. W. (2d) 22; Gray v. Kaliski, 45 S. W. (2d) 157; Besteiro v. Besterio, 65 S. W. (2d) 759; Root & Fehl v. Murray Tool Co., 26 S. W. (2d) 189; Iowa Park Producing & Refining Co. v. Seaboard Oil & Gas Company, 296 S. W. 697; Thurman v. Chandler 125 Texas 34, 81 S. W. (2d) 489.

*Storey, Sanders, Sherrill & Armstrong,* of Dallas, for defendants in error.

The oil in question was admittedly produced in violation of law and therefore willfully converted because the lease contract gave no permission to produce oil illegally, and defendants in error (plaintiffs below) were entitled to the highest market value of the oil between the date of conversion and the filing of the suit. Lovejoy v. Michels, 88 Mich. 15, 13 L. R. A.

770; Sharp v. Beacon Oil & Ref. Co., 108 S. W. (2d) 870; 31 Tex. Jur. 887.

MR. JUDGE SLATTON delivered the opinion of the Commission of Appeals, Section B.

This is a suit by royalty owners against the holder of the seven-eighths working interest in a certain leasehold estate to recover the value of their part of the oil produced from the lease in excess of the amount allowed by the rules of the Railroad Commission of Texas during December, 1933, through 1934 and April, 1935. Special issues were submitted to a jury and upon the verdict judgment was rendered by the trial court in favor of the oil company and against the royalty owners. The aggrieved parties appealed to the Court of Civil Appeals at Texarkana. That court reversed the judgment of the trial court and rendered judgment in favor of the royalty owners. 134 S. W. (2d) 814. The Ortiz Oil Company was granted the writ of error. We summarize the evidence taken from the opinion of the Court of Civil Appeals and the record.

The evidence shows that the oil company filed with the State Comptroller verified reports showing the amounts of allowable oil produced from the least during the period and sold to the Century Refining Company at the market price of $1.00 per barrel, which company remitted by checks monthly to the royalty owners. The allowable oil is not in controversy in this suit. The verified reports reveal and an officer of the Ortiz Oil Company admitted, that said company during the same period produced 297,899 barrels of oil in excess of the amount allowed by the rules of the Railroad Commission.

May 2, 1934, the oil company filed its first production reports, which showed 82,352 barrels of excess oil to have been produced during December, 1933, and January, February and March, 1935. The first remittance received by the royalty owners other than checks for the allowable oil was in the form of cashier's checks, which was mailed from Shreveport on or about March 24, 1934. No information accompanied this remittance to disclose the sender or the purpose for which the check was sent. Reports were filed by the oil company in September, October and November showing the company to have produced 120,870 barrels of excess oil during July, August and September, 1934, and that the same was sold for the sum of $41,207.64. The Louisiana Brokerage Company sent checks

to the royalty owners on or about October 27, 1934, aggregating the sum of $1,154.19. These checks do not represent the pro rata part of the royalty owners' share even at the price which the oil company claims to have sold the excess oil. The reports made by the oil company to the comptroller further shows the production of 94,677 barrels of excess oil during October and December, 1934, and April 1935. The Louisiana Brokerage Company sent to the royalty owners the second check on November 20, 1934, and continued to send the small checks through January, May, June and September, 1935. The royalty owners were never furnished with any statement showing when the oil was produced or the price for which the oil was sold. The only checks received by the royalty owners which could be said to be in part payment for excess oil produced were either cashier's checks or from the Ocean Oil Company and the Louisiana Brokerage Company. No showing is made that other companies to which the Ortiz Oil Company reported excess oil to have been sold during the period ever remitted to the royalty owners for any amount. The checks of the Louisiana Brokerage Company contained a clause reading: "This check is in full settlement of account as shown hereon. Acceptance by endorsement constitutes receipt in full." The brokerage company accompanied the checks issued for September, October and December, 1935, with the following memorandum: "The enclosed check is in payment of your net royalty interest for oil purchased from the Tolliver lease for the (respective month)." Some of the royalty owners went to Shreveport to ascertain from the Ocean Oil Company and Louisiana Brokerage Company information concerning the early remittances which they had received. Neither company could be located. A lawyer promised to send statements showing the amount of oil sold and the price for which the oil was sold and whether the same was allowable oil, but this was not done. The checks were cashed by the royalty owners.

The oil company urges four contentions in this court, viz: (1) That an issue of fact was presented with respect to the amounts the royalty owners received in part payment of the excess oil; (2) that the evidence raised an issue of fact with respect to the defense of accord and satisfaction; (3) that the suit was barred by the two-year statute of limitation; and (4) that the royalty owners were entitled to recover for the cash market value of excess oil which the jury found to be fifty cents per barrel and not the market price of $1.00 per barrel which was paid for allowable oil.

■ The suit of the royalty owners was a liquidated demand and their case was made when it was shown that the holder of the working interest in the leasehold estate had unlawfully produced oil in excess of the amounts allowed by the rules of the Railroad Commission of Texas. The verified reports showed the amount of such oil. The reports further disclosed the cash market price of allowable oil to be $1.00 per barrel during the period in review. The royalty owners admitted the receipt of checks aggregating the following amounts: Geyer, $636.39; Will Thompson, $1,175.71; Mrs. J. A. Ferguson, $949.09; Miss Augusta Nichols, $949.09, and R. G. Storey, $670.48. The checks were introduced in evidence. After these checks were introduced in evidence the following stipulation was entered into between counsel for the respective parties: "That in the event there should be a recovery and judgment entered for plaintiffs for any sum, that the amount of such judgment should bear credits for the total amounts paid to the respective plaintiffs by the Ocean Oil Company and/or Louisiana Brokerage Company as evidenced by checks in evidence and any cashier's checks that may be hereafter produced that were endorsed by any of the plaintiffs herein." No issues were submitted to the jury by the trial court with respect to the amounts received by the royalty owners and none were requested by the oil company. Under these circumstances the oil company cannot complain. If there were disputed issues of fact with respect to such amounts, the oil company by its failure to request their submission waived the right to have such issues determined by the jury. Wichita Falls & Oklahoma Ry. Co. v. Pepper, 134 Texas 360, 135 S. W. (2d) 79. Moreover, we are of the opinion that under the facts stated, together with the stipulation quoted, the Honorable Court of Civil Appeals correctly held that the amounts received by the royalty owners were shown without dispute in the evidence and property gave effect to the stipulation in allowing the oil company such amounts so received as credits upon the judgment rendered against the oil company.

■ The defense of accord and satisfaction cannot be sustained under the record in this case.

"An accord is in essence a contract or agreement, and accord and satisfaction is founded and dependent on, and results from a contract, express or implied, between the parties." 1 C. J. S., Sec. 3, p. 468.

It cannot be contended that an express agreement is shown by the evidence. If such agreement may be implied from the facts in evidence, the defense must be sustained. The royalty owners were never advised by the Ortiz Oil Company that excess oil had been produced from the lease. The oil company before trial denied that any excess oil had been produced. No information accompanied the checks to show the amount of oil and the price for which it was sold. Neither did the oil company attempt to show on the trial of this case the particular oil for which the various remittances were intended. In fact, such information was promised but the same was never furnished. It is true the royalty owners had received various checks from the Louisiana Brokerage Company and the Ocean Oil Company, which companies the jury found to be fictitious. The Ortiz Oil Company cannot take the advantage of its own fictitious companies to show its good faith in denying liability for the production of excess oil. According to the evidence, there was never any uncertainty as to the amount of oil produced by the Ortiz Oil Company. The cash market price of allowable oil during the same period was at all times $1.00 per barrel. Therefore the demand of the royalty owners can be calculated upon undisputed factors and is a liquidated demand. Jones & Co. v. Hunt, 74 Texas 657, 12 S. W. 832. In the case of Simms Oil Co. v. American Refining Co., 288 S. W. 163, it is said:

"Sufficient consideration for accord may inhere in or arise out of a dispute as to liability upon a liquidated demand. This presupposes that denial of liability, in whole or in part, is not merely factitious or mala fides."

The Ortiz Oil Company denied that any excess oil had been produced. Its denial of production of excess oil or liability therefor under the evidence in this case was mala fide and not made in good faith. If the remittances made through the fictitious concerns, that is, the Ocean Oil Company and Louisiana Brokerage Company, were made by the Ortiz Oil Company, it performed only in part its legal obligation and if the parties had agreed without an additional consideration for the creditors to receive a less sum than the whole of the debt, such agreement would not discharge the debt. Lanes, Boyce & Co. v. Squyres & Ighehart 45 Texas 382, 385. We are of opinion that the evidence does not raise the issue of accord and satisfaction.

■ The oil company pleaded the two-year statute of limitation. Suit was filed October 27, 1937. The oil was produced in De-

cember, 1933, through 1934 and April, 1935, inclusive, under an oil and gas lease which obligated the oil company "to deliver to the credit of lessor free of cost in the pipe line to which they may connect their wells the equal one-eighth part of oil produced and saved from the leased premises." The royalty owners alleged a breach of this covenant of the lease. Since the action is upon a breach of contract the four-year statute of limitation is applicable and the lower courts properly overruled the plea of the two-year statute of limitation urged by the oil company. 28 Tex. Jur., p. 110, sec. 32, 31 Tex. Jur., p. 888, sec. 221; Lone Star Gas Co. et al v. Harris, 45 S. W. (2d) 664, rehearing denied, p.998, (writ of error refused) ; Miller et al v. Kountze Corporate School District, (Com. App.) 54 S. W. (2d) 344.

■ The jury found in answer to a special issue that the reasonable cash market value of excess oil in the East Texas field during the time in review was fifty cents per barrel. The oil company contends that such value is the correct measure of damage to be applied to the oil admittedly produced in violation of law. The verified reports of the oil company filed with the comptroller show that oil lawfully produced was worth and had been sold at the price of $1.00 per barrel during all of the time excess oil was being produced. The proper measure of damages to be applied in a case like the present is the market price of oil lawfully produced and not the price of contraband oil or oil that has been unlawfully produced. Sharp et al v. Beacon Oil & Refining Co., 108 S. W. (2d) 870 (writ dismissed). To apply the rule insisted upon by the oil company would in effect reward the wrongdoer for its unlawful acts. This court will not approve such a proposition.

The oil company, in its concluding argument contained in the application for writ of error, insists that no evidence was adduced to show that the Ortiz Oil Company collected any money for the excess oil which was reported to have been sold to the four companies, namely, Century Refining Company, Gold State Oil Company, Tyler Pipe Line Company and Onavo Oil Company, and under the above quoted covenant of the lease no liability was shown against the holder of the seven-eighths working interest in the leasehold estate.

The record does not support that contention. An officer of the oil company was called as a witness by the royalty owners and testified that the company was paid for the excess oil

and that the money came from the Louisiana Brokerage Company, Gold State Oil Company and the Ocean Oil Company.

The judgment of the Court of Civil Appeals which reversed and rendered the judgment of the trial court is affirmed.

Opinion adopted by the Supreme Court February 4, 1942.

Rehearing overruled March 4, 1942.