## McKEE v. REED.
### No. 2305.

Court of Civil Appeals of Texas. Eastland.

Nov. 6, 1942.

Rehearing Denied Dec. 4, 1942.

---

354

Clyde O. Eastus, U. S. Atty., of Fort Worth, for appellant.

Callaway & Callaway, of Brownwood, for appellee.

GRISSOM, Justice.

L. P. Reed obtained judgment against Robert E. McKee for the amount of two repair bills on Caterpillar Tractors leased by Reed to McKee. McKee has appealed. McKee was the general contractor engaged in building an army camp at Brownwood for the United States government. The contract between McKee and the government is not in the record. McKee leased four Caterpillar Tractors and other equip-ment from Reed in October, 1940. About three weeks later the tractors were re-paired at a cost of $5,434.19. Upon com-pletion of the work Reed sought the return of his equipment. One of the tractors was "captured" by the Government, and the others were returned. Immediately prior to their return four instruments were executed by Mosley for Reed. These in-struments will be hereinafter discussed. When the three tractors were returned to Reed in May, 1941, he contended they were then again in need of repairs. That, in order to place the equipment in as good condition as it was when it was delivered to McKee, reasonable wear and tear ex-cepted, repairs requiring the expenditure of $4,299.15 were required. Recovery of the amount of these two repair bills was sought by plaintiff and judgment therefor, aggregating $9,733.34, was obtained.

Plaintiff alleged the leasing of said ma-chinery to defendant; that defendant was engaged in the construction of said army camp and leased plaintiff's equipment for that purpose; that plaintiff and defendant entered into a written lease contract; that said contract provided the "Equipment shall be maintained in good repair and working condition by the Lessee without cost to the Lessor. All gasoline and oil for the operation of such equipment will be furnished by the Lessee." Plaintiff al-leged, with reference to the first repairs, that immediately after delivery of said equipment to defendant, his machinery was put to work; that after about three weeks plaintiff came to defendant, in re-sponse to defendant's request and for de-fendant's accommodation, to ascertain the nature of repairs defendant contended were needed; that by reason of the hard and unusual use of the machinery by de-fendant and defendant's failure to keep it properly repaired and lubricated the trac-tors were in bad condition; that at the instance and request of defendant, plain-tiff purchased spare parts and secured the labor and repaired said machinery for de-fendant and thereby incurred expenses in the sum of $5,434.19; that defendant re-fused to pay for these repairs and plaintiff was compelled to pay therefor to protect his credit.

Plaintiff alleged, with reference to the second repairs, that his equipment was thereafter used until May 1, 1941, when the machinery (except one tractor "cap-tured" by the government) was returned

to plaintiff; that in violation of the contract defendant failed to keep the machinery in good repair, but returned said equipment to plaintiff in bad condition thereby necessitating the expenditure of $4,299.15 by plaintiff to repair said machinery when returned to plaintiff, in order to place it in as good condition as it was when delivered to defendant, reasonable wear and tear excepted; that in the lease contract defendant had agreed to make all of said repairs in order to keep said machinery in proper working condition and in as good condition as he received it, ordinary wear and tear excepted, but that defendant refused to make said repairs, or pay therefor.

Defendant answered, among other things, that the equipment furnished by plaintiff to defendant when delivered was not in condition to render efficient, economical and continuous service, as provided in the contract; that by parol agreement it was understood the machinery would, because of the urgent need therefor, be put into immediate service with waiver of inspection of the tractors to determine their condition and with the understanding that "the condition and the matter of repairs thereon would be disposed of later"; that it was determined between plaintiff and defendant that the machinery needed repairs; that the first repairs, made about three weeks after the machinery had been delivered to the defendant, were made "by the Plaintiff because of the fact that such tractors and equipment at the time of delivery to Defendant were not in condition to render efficient, economical and continuous service * * *", and that the cost of such repairs was therefore chargeable to plaintiff and not to defendant. Defendant alleged, with reference to the first repairs, that about three weeks after the equipment was furnished to the defendant, defendant and the "Contracting Officer" determined the machinery failed to perform to their satisfaction and demanded that plaintiff place it in satisfactory condition, and plaintiff, in order to avoid the cancellation of his equipment rental agreement of October 4, 1940, made the repairs and they were properly chargeable to plaintiff.

Defendant further alleged that if plaintiff ever had any cause of action against defendant "such claim and cause of action in favor of Plaintiff against the Defendant was by Plaintiff in writing released at the time each of said tractors * * * was redelivered to the Plaintiff * * *". That at the time of the redelivery of the tractors and equipment to plaintiff, plaintiff through his duly authorized agent, Mosley, did "in writing execute a written release of all damages, if any, on each of such tractors * * *". That by virtue of said instruments executed by Mosley, every claim and cause of action which plaintiff had because of repairs made, or needed when the equipment was returned to plaintiff, was released and defendant acquitted of any liability by reason of its alleged failure to repair the tractors. That said written releases executed by Mosley were executed for a valuable consideration and "operated to release defendant from any and every claim for damages asserted by the Plaintiff * * * because of the alleged failure of the Defendant to take care of, repair, and to oil and lubricate the said tractors * * *".

By supplemental petition plaintiff denied the allegations of defendant's answer. Plaintiff specially denied his machinery needed repairs when it was delivered to defendant, or that he undertook to have the machinery repaired for the purpose of avoiding a cancellation of his rental agreement; he alleged that because of extremely hard use to which the tractors were put and the improper manner in which they were operated and maintained by defendant during said period the machinery was in need of repairs about three weeks after delivery; that defendant had no competent mechanics to care for and repair the equipment; that defendant requested plaintiff to come to Brownwood and supervise the repairs because of plaintiff's familiarity with the said machinery and as an accommodation to defendant; that it was never intimated to plaintiff that he was expected to pay for the repairs or that plaintiff's equipment was not in good condition when it arrived on the job; that it was agreed defendant should pay for the labor and materials necessary to make the repairs.

Plaintiff denied he had released defendant from his obligation to repair the machinery or pay the repair bills or authorized Mosley to execute such a release. He alleged that before the machinery was returned to plaintiff a controversy had arisen between plaintiff and defendant over the failure of defendant to pay for the repairs made in November, 1940, three or

four weeks after the machinery was delivered to defendant; plaintiff alleged the question had been discussed by plaintiff and defendant as to making the necessary repairs on the machinery when it should thereafter be returned to plaintiff; that on ·April 4, 1941, defendant advised plaintiff he was through with plaintiff's machinery and was ready to return it; that plaintiff then came to Brownwood and took up the question of payment for the November, 1940, repairs that plaintiff had paid for in order to protect his credit; that defendant prepared and tendered to plaintiff a general release for his execution about April 10, 1941, which plaintiff refused to sign; that it was verbally agreed defendant would return the equipment to plaintiff "and the matter of settling said differences would be left open until such differences had been settled, as the machinery was in the Defendant's way and as Plaintiff needed it to go to work on another job." That McCutcheon, an employee of the United States Government, who was superintending the construction by defendant, stated to plaintiff "that in order for him to release the machinery to Plaintiff, the Plaintiff or his agent, would have to sign a receipt for each piece of equipment, acknowledging receipt of the same, but this would in no manner affect the Plaintiff's right to recover the amount which had been theretofore paid for repairs, or Plaintiff's right to have said machines then repaired and placed in good condition, but would leave said matter entirely open for future adjustment". Plaintiff alleged that, relying upon said statement, he authorized Mosley to sign such receipts "but expressly without any authority to release the Plaintiff's claims for compensation for the repairs theretofore made and for the repairs then needed * * *". That if the instruments pleaded by defendant as releases were more than such receipts they were executed without consideration and obtained by fraud; that immediately after being advised that defendant had inserted in the instruments signed by Mosley some language in the nature of a release, plaintiff repudiated said purported releases and called to defendant's attention the circumstances under which they were executed; that the purported releases were never intended to be a contract between plaintiff and defendant, thereby apparently meaning that it was intended only to effect a release of the machinery by the United States in accordance with plaintiff's understanding with McCutcheon; that plaintiff did not authorize the execution by Mosley of any release between plaintiff and defendant; that plaintiff had been tendered a release by defendant which he had refused to sign at the time he authorized Mosley to execute a receipt for the machinery, all of which was known to defendant; that defendant knew plaintiff had expressly refused to release any part of his cause of action.

The cause was submitted to the jury on special issues, which issues and the jury's answers thereto are as follows:

No. 1. Do you find from a preponderance of the evidence that on or about the 14th day of April, 1941, L. P. Reed agreed with Major Ryan or the defendant, or his agents or representatives, that if the defendant would deliver to plaintiff the tractors in controversy, plaintiff would waive his right to be reimbursed for all past repairs that had been made on said tractors and other equipment? Answer: No.

No. 2. Do you find from a preponderance of the evidence that on or about the 14th day of April, 1941, L. P. Reed agreed with Major Ryan or the defendant, or his agents or representatives, that if the defendant would deliver to plaintiff the tractors in controversy, plaintiff would waive his right to be reimbursed for all repairs then needed and necessary to be made on the three tractors in controversy released to the Plaintiff? Answer: No.

No. 3. What amount of money, if any, do you find from a preponderance of the evidence, was a reasonable and necessary amount required to be expended in November, 1940, to place the machinery leased by plaintiff to defendant in proper working condition? Answer: $5,434.19.

No. 4. What amount of money, if any, do you find from a preponderance of the evidence was a reasonable and necessary amount required to be expended in April, 1941, to place the three tractors leased by plaintiff to the defendant, and returned to plaintiff, in proper working condition? Answer: · $4,299.15.

No. 5. Do you find from a preponderance of the evidence that on or about the 14th day of April, 1941, the plaintiff had an agreement with Major Ryan or the defendant, or his agents or representatives, that the plaintiff would sign a release on the tractors in controversy and that he would

be paid the sum of $5,434.19 for repairs theretofore made on said tractors and other equipment? Answer: Yes.

Defendant's first point is that plaintiff, through Mosley, for a valuable consideration, executed and delivered to defendant full releases from liability for the repair bills sued for.

The written authority granted to Mosley is shown by the following instrument:

"Brownwood, Texas
"April 14, 1941

"Mr. McCutcheon:

"I herewith give to my superintendent, Mr. Joe W. Mosley, full authority to sign all final releases on my equipment.

"Louis P. Reed."

The instruments signed by Mosley and relied on by defendant as a release of plaintiff's entire cause of action were each styled "Equipment Release", one being executed for each tractor returned, and an instrument referred to in the record as a "general release". The so-called "general release" was a printed form prepared by McKee, as general contractor, wherein by its general terms McKee had a sub-contractor make an affidavit that he had paid the debts incurred by him on the project and released the general contractor and owner of any liability by reason of the debts of the sub-contractor incurred in performing the sub-contract. It does contain provisions which, if segregated and applied to someone other than a sub-contractor, could be applicable to plaintiff and his cause of action, but they are not clearly and necessarily so. Reed was not a sub-contractor. The instruments are ambiguous and subject to explanation. The equipment releases, one of which was executed for each tractor returned to plaintiff, appear to be statements by a representative of the Government addressed to one designated only as "White". One of these releases, practically the same as all others except that each refers to different machinery, is as follows:

"Equipment Release

"Date  *April 4th, 1941* 194—   Equipment No. *188 & 188A*
  "To:  *White*                Contract No.  *238*
*RD 8 Cat Tractor  Ser:#1H1614  and 18 yd. Scraper*
                      *Ser. #54660YR18B*
should be released. In my opinion the following repairs should be made to place this equipment in the same condition, ordinary wear and tear excepted, as when received.
    "*No repairs on this equipment.*

"(To Be Filled In By Leasing Agent) The equipment described above was shipped To:  *L. P. Reed (Owner)*
"Rental period should extend through  *April 4th, 1941*  194—
"Remarks: _____

"Signed   *Clyde G. Normandt (?)*
"Original and Duplicate to Leasing Agent."

(The additions to the printed form are in italics.)

Stamped across the middle of the instrument is the following:  "Receipt of the equipment listed above is acknowledged and the condition in which it is returned is satisfactory, and lease contract therefor is terminated.  Lessor, L. P. Reed, by Joe W. Mosley.  Approved for C.Q.M. (Meaning Construction Quarter Master) L. H. McCutcheon."

The undisputed evidence shows none of the equipment was "shipped to L. P. Reed". It was delivered to Mosley at the camp. The undisputed evidence also shows that about the day following the execution of said "releases" by Mosley McKee wrote Reed:  "With reference to the various repair bills which you paid for work done on your equipment, it is going to be necessary for us to have these bills broken down in such a way that we can tell the repairs that went to each piece of equipment.  This breakdown will be necessary before any negotiations which might lead to the payment of any part of this money to you can be made.  This is in connection with our verbal conversation, but I wish to remind you that nothing can be done until this matter is attended to."  On May 14, 1941, McKee wrote three letters to Reed.  Each letter enclosed a check in payment of the last few days rental on one of the three tractors returned to Reed.  Each letter stated a "Sub-Contractor's affidavit and Final Release" was enclosed and was to be executed by Reed.  Each letter concluded with a statement of which the following from letter Number One is typical:

"We are also enclosing herewith Sub-Contractor's affidavit and Final Release to be executed.  This release properly executed must be attached also to our check when presented for payment.

"Please note on the release that exception has been taken to your claim in the amount of $668.44 on an RD 8 Caterpillar Tractor, Serial No. IH̶1̶6̶1̶4̶/, which amount
                    and/or 1416
is in dispute".

Each letter also contained one of McKee's forms referred to by Defendant as a "gen-

eral release" and headed "Sub-Contractor's Affidavit and Final Release". Each such release contained a provision that Reed's claim in a stated amount on a certain numbered tractor was excepted from the release. As soon as Reed learned McKee was contending he had released his cause of action, he wrote McKee as follows:

"In line with our conversation of yesterday morning, this is to advise you in writing that Mr. J. W. Mosley had authority from me only to sign the Equipment releases that were in Mr. McCutcheon's office.

"The note of authority that I gave Mr. Mosley was addressed to Mr. McCutcheon only, and was in line with the understanding that had just been arrived at in Major Ryans office between Major Ryan, Mr. McCutcheon, and myself, said understanding being that Mr. McCutcheon was to release and give me immediate possession of all my equipment except my RD7 tractor, Major Ryan in the meantime taking under advisement the release of the RD7 and the payment of the repair bills that at that time were in your hands.

"The final release in your office, signed by Mr. Mosley, is herewith repudiated in its entirety by me because Mr. Mosley had no authority to sign same, and did so only under Mr. McCutcheon's insistence and refusal to release my equipment, in spite of the agreement mentioned above, until Mr. Mosley had signed the release in your office."

The "equipment releases" could not, in any event, be considered as anything more than a statement by Reed that the tractors were in a satisfactory condition when returned and would be material only as evidence relating to plaintiff's second claim for repairs, that is for repairs made subsequent to return of the tractors to plaintiff. They do not constitute as a matter of law a release of plaintiff's cause of action and as evidence are not revelant to plaintiff's claim for repairs made in November, 1940. But for the matter stamped on the face of the "equipment release", it appears to be only a recommendation by some representative of the Government that the equipment named therein should be released, and a statement that, in his judgment, no repairs were necessary to place the equipment "in the same condition, ordinary wear and tear excepted, as when received". The equipment releases, although they constitute evidence, if signed by an au-

thorized agent of Reed, of an admission by Reed that the condition of the equipment when returned was satisfactory, are not sufficient to establish conclusively, as a matter of law, a release of even said second claim, but are vague and ambiguous and justify the introduction of evidence explanatory thereof. The authorization of Mosley by Reed is in the same condition. "Final Equipment Releases" certainly has no established legal meaning. If in a particular trade or business it has an established and well understood meaning no evidence of that fact is in the record. We, therefore, conclude the court did not err in admitting evidence of the intention of the parties. Mauritz v. Bell, Tex.Civ.App., 81 S.W.2d 730, writ refused; Henderson v. Stith, Tex.Civ.App., 43 S.W. 566, writ refused; Atchison, T. & S. F. R. Co. v. Fiedler, Tex.Civ.App., 158 S.W. 265, 267, writ refused; 17 Tex.Jur. 873; 32 C.J.S., Evidence, § 960, p. 903; Bell v. Mulkey, Tex.Com.App., 16 S.W.2d 287.

Defendant's fourth point is that the court erred in overruling his objections to plaintiff's testimony that Major Ryan said, in effect, that defendant was liable for the repair bills and that the first repair bill would be submitted to San Antonio Headquarters for approval. It is difficult to understand much of this testimony in the absence of the contract between McKee and the Government. We think no valid and sufficient objection was made to such testimony. However, such testimony was substantially repeated several times without objection. There is also testimony that a similar statement was made in the presence of defendant's agents and they said nothing. Defendant on several occasions inquired as to said statement by Major Ryan. Under such circumstances the introduction of such testimony has been repeatedly held not to be reversible error. McCormick and Ray, Texas Law of Evidence page 23; Sanger Bros. v. Craddock, Tex.Sup., 2 S.W. 196; Texas & P. R. Co. v. Sherer, Tex.Civ.App., 183 S.W. 404, writ refused; Newton v. McCarrick, Tex.Civ.App., 75 S.W.2d 472; Trinity & B. V. R. Co. v. Johnson, 62 Tex. Civ.App. 605, 131 S.W. 1137.

The point is not directly presented that the verdict is insufficient to support the judgment. In view of that fact, regardless of the meagerness of the verdict, which does not include all the issues that constitute plaintiff's grounds of recovery, we think it sufficient to merely quote the lan-

guage of Justice Sharp in Nixon v. Hirschi, 134 Tex. 415, 418, 136 S.W.2d 583, 584: "Under the state of this record, we presume that the trial court, in the light of the findings of the jury, found such issue in such way as to support the judgment rendered. Wichita Falls & Oklahoma R. Co. v. Pepper, [134 Tex. 360], 135 S.W.2d 79". See also Texas Employers Ins. Ass'n v. Miller, 137 Tex. 449, 454, 154 S.W.2d 450; Ortiz Oil Co. v. Geyer, 138 Tex. 373, 159 S.W.2d 494; Rule C.P. 279.

The foregoing disposes of all of defendant's points without detailed discussion of each point. They have all been considered and are overruled. The judgment is affirmed.