**Sergio MIRANDA, Appellant,**

v.

**JOE MYERS FORD, INC., Appellee.**

**No. 01–81–0842–CCV.**

Court of Appeals of Texas,
Houston (1st Dist.).

March 25, 1982.

Rehearing Denied May 6, 1982.

---

Coppock & Teltschick, T.D. Sullivan, Houston, for appellant.

Sussman & Kessler, Henry A. Popkin, Houston, for appellee.

Before SMITH, BASS and DYESS, JJ.

DYESS, Justice.

The appellant, S. Miranda, brought suit against the appellee Joe Myers Ford, Inc., alleging a violation of the Deceptive Trade Practices Act. At the close of the appellant's evidence, the appellee, with leave of court, filed its trial amendment wherein it alleged that an accord and satisfaction had occurred between the parties. The case was submitted on special issues, all of which were answered favorably to the appellant, including special issue no. 6 which required the jury to determine whether an accord and satisfaction occurred. In due course the appellee filed its motion for judgment n.o.v., which was granted by the court.

A condensed statement of the factual background giving rise to this controversy includes the following.

S. Miranda, the appellant, went to Joe Myers Ford to purchase a Ford Bronco for one Henry Ledezma, a friend and fellow Panamanian. The vehicle was needed for Ledezma's potato farm in Panama. The appellant was directed at Joe Myers Ford to deal with Ron Bondie, a salesman.

Their first conversation about the prospective purchase occurred about mid-May of 1978. Bondie advised the appellant that a $200 deposit was all that was required to guarantee the order. Thus, Ledezma, in Panama, wired the money to the appellant who gave the deposit money to Bondie on June 1, 1978. At this time the appellant was told by Bondie that the Bronco would be ordered.

During their numerous discussions Bondie quoted Miranda a price on a 1978 Bronco and, according to the appellant, Bondie "guaranteed" that they would be able to get a 1978 model. But, according to Bondie, Miranda was simply advised as follows: "If we have a quota and you place your order within the deadline we will deliver the car to you." The appellant was also advised that his cancelled $200 check would serve as a receipt on the deal. The appellant was given a copy of the agreement worked up between himself and Bondie, indicating an $8,455.45 purchase price for the Bronco.

In late July the appellant called Bondie and was advised that delivery of the Bronco was 4–6 weeks away; he was also told not to worry; that the Bronco had been ordered and would be arriving soon. A later call in August indicated entirely different prospects; the appellant was advised that Bondie had left Joe Myers Ford and that the Bronco had never been ordered. The appellant was also told that there was no way for the appellee to get a 1978 Bronco for him; he was also told that Joe Myers Ford would get a 1979 Bronco and would sell it to him with the same $300 discount he was to have received on the 1978 model. *However, the price, including the discount, was $9,226.36, almost $1000 more than the cost of a 1978 model.*

The appellant sought the help of an attorney and, on October 4, 1978, his attorney sent a demand letter to the appellee, informing the appellee of Miranda's contention that his contract with Bondie had been breached and giving notice of Miranda's intent to file suit under the Deceptive Trade Practices Act unless the appellee performed the contract.

The appellee's reply of October 10, 1978 was quite explicit, indicating the dealership's belief that no such contract had been entered into. It concluded with the following paragraph.

Please be advised that:

1. We will sell Mr. Ledezma, through his agent Mr. Miranda, a 1979 Bronco for the same discount as offered in the sale of a 1978 model with only the price increases of the Manufacturer.

2. Or we will refund, in full, the $200.00 deposit.

In November, 1978, Ledezma came to the U.S. He and Miranda went to Joe Myers Ford and bought a Bronco from the appellee for $9,226.36. This lawsuit was filed later.

The appellant raises two points of error on appeal. First he claims that the jury answer to the accord and satisfaction special issue should not have been disregarded by the court, and that the judgment n.o.v. should not have been entered.

By his second point of error the appellant asserts that the trial court erred in granting the appellee's motion for judgment n.o.v. because even if the answer to special issue number 6 is disregarded, the answers of the jury to the remaining issues support a judgment for the appellant.

Since the appellant has grouped and discussed his two points of error together, we shall do likewise.

A jury's answer to a special issue may be disregarded only when (1) it has no support in the evidence or, (2) the issue is immaterial. *Simpson v. Phillip's Pipe Line Co.,* 603 S.W.2d 307, 311 (Tex. Civ. App.—Beaumont 1980, writ ref'd n.r.e.). In fact, only when the evidence conclusively establishes an opposite finding may a judge substitute his own finding. *Texas Paper Stock Co. v. Corpus Christi Food City, Inc.,* 609 S.W.2d 259 (Tex. Civ. App.—Corpus Christi 1980, no writ).

Likewise, the granting of a judgment n.o.v. is proper only under very limited circumstances. *Elliot v. Elliot,* 597 S.W.2d 795, 800 (Tex. Civ. App.—Corpus Christi 1980, no writ). Chief Justice Coleman wrote in *Regal Construction Co. v. Hansel,* 596 S.W.2d 150, 154 (Tex. Civ. App.—Houston [1st Dist.] 1979, no writ), as follows:

In acting upon a motion for judgment not withstanding the verdict all testimony must be considered in a light most favorable to the party against whom the motion is sought, and every reasonable intendment deducible from the evidence is to be indulged in such party's favor.

Justice Coleman went on to say:

To sustain the action of the trial court in granting the motion it must be determined that there was *no evidence* with probative force upon which the jury could have made the finding relied upon. *Id.*

In short, the jury's answer to the accord and satisfaction special issue was properly disregarded, and the judgment n.o.v. properly granted, only if there was no evidence in the record to support a finding that an accord and satisfaction had not occurred.

The affirmative defense of accord and satisfaction was discussed by Justice Campbell of the Texas Supreme Court in *Harris v. Rowe*, 593 S.W.2d 303, 306 (Tex. 1979) in these words:

This defense rests upon a new contract, express or implied, in which the parties agree to the discharge of an existing obligation in a manner otherwise than originally agreed. The tender of the alternate satisfaction is upon the condition that the acceptance will constitute a discharge of the underlying obligation. *Jenkins v. Henry C. Beck Co.*, 449 S.W.2d 454 (Tex. 1969). An "accord" is in essence a contract or agreement, and "accord and satisfaction" is founded on and dependent on, and results from a contract, express or implied between the parties. *Ortiz Oil Co. v. Geyer*, 138 Tex. 373, 159 S.W.2d 494 (1942).

\* \* \* \* \* \*

We find the agreement of July 7 constituted an accord and satisfaction and is a bar to a suit for damages on the February 25 contract for any items included in the agreement. An accord and satisfaction constitutes a bar to any action on the original contract. *Ensley v. Spickard*, 232 S.W.2d 780 (Tex. Civ. App.—Dallas 1950, writ ref'd). Rowe may recover only the $775.00 held by the Title Company pursuant to the agreement.

■ In our opinion, the facts of the instant case indicate the reaching of an accord and satisfaction even more convincingly than the facts in *Harris*. Following receipt of the appellant's demand letter of October 4, 1978, the appellee responded with its offer of settlement letter on October 10, 1978. Thereafter on November 23, 1978, Mr. Ledezma, the appellant's alleged principal, purchased the Bronco upon the terms and conditions outlined in the October 10th offer of the appellee. It is our view that such letter of October 10th made clear that the sale of the Bronco with the discount was conditioned upon its acceptance constituting a discharge of the alleged obligation of the appellee to the appellant. The aforedescribed correspondence points up a disagreement between the parties and the threat of a lawsuit by the appellant, an offer by the appellee to resolve the disagreement, and finally, the acceptance of this offer by the appellant, without protest, in the purchase of the Bronco.

We overrule the appellant's first point of error.

■ While our ruling with respect to the appellant's first point of error is dispositive of this appeal, the appellee has raised by its first crosspoint the question of whether the appellant had such a justiciable interest as would entitle him to bring this suit in the first place. The appellant is consistent throughout in contending that Mr. Ledezma is the injured party and that he, Miranda, has been the agent for Ledezma. The record in this case is totally silent insofar as showing that the appellant was authorized by Ledezma to bring this suit. We hold that the appellant was simply an agent without authority to maintain this suit. *Tinsley v. Dowell*, 87 Tex. 23, 26 S.W. 946, 948 (1894); *San Jacinto Rice Co. v. A.M. Lockett & Co.*, 145 S.W. 1046 (Tex. Civ. App.—El Paso 1912, writ dism'd.); 2 Tex. Jur. 2d Agency §§ 154–155. We also hold that the appellant had no justiciable interest in the subject matter of the litigation and hence had no right to maintain this action in the trial court. *Berger v. Berger*, 578 S.W.2d 547, 549 (Tex. Civ. App.—Houston [1st Dist.] 1979, no writ).

We affirm the judgment of the trial court.