**NATURAL GAS CLEARINGHOUSE, Appellant,**

v.

**MIDGARD ENERGY COMPANY, Formerly Known As Maxus Exploration Company, Appellee.**

No. 07–99–0038–CV.

Court of Appeals of Texas, Amarillo.

Oct. 22, 1999.

Opinion Granting Rehearing Jan. 3, 2000.

Rehearing Overruled Feb. 14, 2000.

---

Hinkle Cox Eaton Coffield Hensley LLP, Wyatt L. Brooks, Amarillo, Thompson & Knight, Craig A. Haynes, Beverly Ray Burlingame, Dallas, for appellant.

Sprouse Smith & Rowley PC, Harlow Sprouse, Matthew McCann, Amarillo, for appellee.

Before QUINN, REAVIS, and JOHNSON, JJ.

REAVIS, Justice.

By this appeal, Natural Gas Clearinghouse (NGC) challenges the trial court's order granting summary judgment in favor of Midgard Energy Company, formerly known as Maxus Exploration Company (Midgard). Instead of presenting one broad issue as recognized in *Malooly Brothers, Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex.1970), NGC contends by five issues that the trial court erred in granting summary judgment because (1) damages (*i.e.*, lost profits) were based on a fatally defective affidavit and therefore not established as a matter of law; (2) NGC raised a genuine issue of material fact on its affirmative defense of force majeure defeating Midgard's right to summary judgment as a matter of law; (3) the affidavit in support of the award of attorney's fees was conclusory and deficient; and (4) prejudgment interest was calculated at the rate of 10%. Also, by issue (5), which is addressed by separate opinion in Cause No. 07–99–0099–CV, NGC contends the trial court erred in severing Midgard's contract claim from other claims presented in the underlying suit. Based upon the rationale expressed herein, we affirm in part, and reverse and remand in part.

In March 1990, NGC acquired from Apache a 50% interest in a gas-gathering system which consisted of interconnected pipelines which collected gas from multiple wells and transported the gas to designated delivery points. Under the agreement, Apache retained the right to repurchase NGC's 50% interest. NGC also owned interest in some, but not all, of the gas being transported through the gathering system, which became commingled with the gas delivered by other producers. Then, in November 1990, NGC entered into a gas-processing contract with Midgard which obligated NGC to deliver certain volumes of gas to Midgard's plant for processing. Under the contract, Midgard was to remove the liquid content from the gas and redeliver the "dry" gas, along with 85% of the liquids obtained from processing, to NGC, retaining 15% of the NGC liquids as its compensation for the gas processing.

Among other provisions, the contract between NGC and Midgard contained the following provision entitled "Force Majeure."

11.1 Any failure of any party hereto to perform any of the obligations hereunder shall be excused if such failure is due to fires, strikes, lack of water, winds, lightning, accidents to machinery or facilities, shutdowns of machinery or facilities required in the course of safe or efficient operations, unavailability of materials or transportation facilities, unavailability, failures or delays in or apportionment of transportation, including that involved in transporting Plant Products, or any circumstances of a similar or dissimilar nature beyond the control of the party failing to perform, including governmental regulations.

The November 1990 contract was amended by letter agreement dated May 9, 1991. However, the May 9, 1991 amendment did

not alter or amend paragraph 11.1 of the original contract. NGC delivered gas to Midgard for over two years without significant dispute. Then, in 1993, problems arose when Apache entered into a transaction with Transok, Inc. and Transok Gas Gathering Company (Transok),[1] which acquired control of the gas-gathering system. Following Transok's acquisition of control of the gathering system, NGC entered into a gas-gathering agreement with Transok and NGC claims that it insisted that Transok honor the agreement between NGC and Midgard. Initially, Transok delivered gas to Midgard, but ceased doing so in 1994.

Following notice to Midgard by NGC that Transok would cease delivery of gas to Midgard's plant for processing, Midgard commenced this action in February 1994 against NGC and Transok. Among other things, by its original petition, Midgard sought a declaratory judgment that NGC and Transok were required to deliver gas to Midgard for processing in accordance with the November 1990 and May 9, 1991 agreements, and sought attorney's fees. In addition, Midgard alleged tortious interference with business relationships against Transok. Then by its first amended petition, Midgard sought breach of contract damages against NGC and also sought damages resulting from NGC's alleged fraudulent misrepresentations to Midgard, and again alleged tortious interference with business relationships against Transok. Following the filing of NGC's original answer which was never amended nor supplemented and which constituted a general denial, it filed a cross-claim against Transok for tortious interference with its contract with Midgard.

The first motion for summary judgment was filed by Transok which sought judgment that Midgard and NGC take nothing against it. Then, NGC filed its motion for partial summary judgment and later its amended motion for partial summary judgment against Transok, but NGC did not file a defensive motion for summary judgment that Midgard take nothing. Midgard then filed its motion for partial summary judgment, by which it sought judgment against NGC for damages for its claims of breach of contract and fraudulent misrepresentation. Also, by its response to Transok's motion for summary judgment, Midgard sought judgment on its tortious interference claim against Transok. Although the claims of Midgard and Transok arose out of the non-delivery of gas by NGC or Transok to Midgard in accordance with the contract between Midgard and NGC, their motions for summary judgment against NGC are not common. Nevertheless, NGC chose to respond to the separate motions for summary judgment of Midgard and Transok by one response.

After hearing all motions for summary judgment, by order signed June 11, 1998, the trial court granted Midgard's motion for partial summary judgment against NGC on its contract claim and decreed that Midgard recover from NGC, $3,664,-965.47, plus interest through May 31, 1998 in the amount of $1,557,597.80, plus interest thereafter at a rate of 10% simple, in the amount of $1,004.10 per day until final judgment, together with $134,307.25 as attorney's fees. The June 11 order expressly provided that all other questions raised by Midgard's motion and the motions of other parties were taken under advisement. Then, on November 5, 1998, the trial court signed its order dismissing Midgard's action against Transok without prejudice, and on November 6, 1998, signed its order severing Midgard's contract claim from its other claims against NGC and the claim by NGC against Transok, and providing that the judgment that Midgard recover its contract damages be a final judgment. In our analysis, we limit our review to the partial summary judgment

---

1. Transok is not a party to this appeal because after the trial court granted Midgard's motion for summary judgment, Midgard dismissed its action against Transok, Inc. and Transok Gas Gathering Company, without prejudice.

on Midgard's contract claim and eliminate any reference to its claim for fraudulent representation. However, we first set out the appropriate standard of review for a traditional summary judgment.

### Summary Judgment Standard of Review Rule 166a(c)

In reviewing a summary judgment, this Court must apply the standards established in *Nixon v. Mr. Property Management,* 690 S.W.2d 546, 548–49 (Tex.1985). A motion for summary judgment must state the specific grounds[2] therefor. Tex.R.Civ.P. 166a(c). For a party to prevail on a motion for summary judgment, he must conclusively establish the absence of any genuine question of material fact and that he is entitled to judgment as a matter of law. *Id.* A movant must either prove all essential elements of his claim, *MMP, Ltd. v. Jones,* 710 S.W.2d 59, 60 (Tex.1986), or negate at least one essential element of the non-movant's cause of action. *Randall's Food Markets, Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex.1995). Once the movant has established a right to summary judgment, the non-movant has the burden to respond to the motion for summary judgment and present to the trial court any issues that would preclude summary judgment. *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 678 (Tex.1979); *Barbouti v. Hearst Corp.,* 927 S.W.2d 37, 64 (Tex.App.—Houston [1st Dist.] 1996, writ denied). Issues which the non-movant contends preclude the granting of a summary judgment must be expressly presented to the trial court by written answer or other written response to the motion and not by mere reference to summary judgment evidence. *McConnell v. Southside School Dist.,* 858 S.W.2d 337, 341 (Tex. 1993). Issues[3] not expressly presented to the trial court in writing shall not be con-

sidered on appeal as grounds for reversal. Tex.R.Civ.P. 166a(c). Further, all theories in support of or in opposition to a motion for summary judgment must be presented in writing to the trial court. *Casso v. Brand,* 776 S.W.2d 551, 553 (Tex.1989). We will consider NGC's issues in a logical rather than numerical order.

By its second issue, NGC contends that Midgard's proof of contract liability was fatally defective and that Midgard failed to negate an affirmative defense. By sub-issue A, NGC contends Midgard's only evidence of NGC's liability was fatally defective, and by sub-issue B, contends it raised a genuine fact issue on the affirmative defense of force majeure, which Midgard failed to negate. We disagree, and for the reasons explained herein, hold that Midgard did establish NGC's contract liability as a matter of law, subject to our subsequent discussion on the amount of damages.

As grounds for its motion for partial summary judgment, Midgard alleged that it established the elements essential to its recovery, (*i.e.,* duty, breach, causation and damages) as a matter of law. Indeed, NGC did not dispute the existence of the written contracts in accordance with Rule 93(7) of the Texas Rules of Civil Procedure, or raise any other matter required to be verified by Rule 93. Moreover, NGC did not deny that it ceased delivering gas to Midgard. Instead, NGC contended that it urged Transok to continue delivering gas to Midgard. Moreover, by its response to the separate motions for summary judgment of Midgard and Transok, NGC incorporated authority and facts presented in its motion for partial summary judgment against Transok. Among other undisputed facts, NGC asserted the follow-

---

**2.** Consistent with Rule 166a, we use the term "grounds" to refer to the reasons entitling the movant to summary judgment. Likewise, we use the term "issues" to refer to the reasons the non-movant contends defeat the movant's

entitlement to summary judgment. *See McConnell v. Southside Indep. School Dist.,* 858 S.W.2d 337, 339 n. 2 (Tex.1993).

**3.** See footnote two.

ing:[4]

- On November 1, 1990, NGC entered into a gas processing agreement with Midgard.
- By letter agreement dated May 1, 1991, NGC and Midgard amended the Midgard agreement.
- The Midgard agreement, as amended, imposed an obligation on NGC to deliver to Midgard's Roger Mills plant all gas controlled by NGC in excess of 20,000,000 cubic feet of gas per day gathered through the East Moorewood and Muletrain Laterals.
- Transok approached NGC and negotiated a new gas-gathering agreement for NGC's gas gathered over the NAGS system.
- Following execution of the Transok gas-gathering agreement on April 1, 1993, unprocessed gas was delivered to the Midgard delivery point until February 1994.

NGC's motion concluded with its request that the court declare Transok had breached the obligation to deliver unprocessed gas "in sufficient quantities to permit NGC to meet its contract obligations to [Midgard] under the prior existing gas processing agreement." Because the foregoing was incorporated into NGC's response by footnote, and all motions for summary judgment were properly before the trial court, all the evidence accompanying the motions is considered. *DeBord v. Muller,* 446 S.W.2d 299, 301 (Tex.1969); *Murphy v. McDermott Inc.,* 807 S.W.2d 606, 611 (Tex.App.—Houston [14th Dist.] 1991, writ denied); *Kimble v. Aetna Cas. And Sur. Co.,* 767 S.W.2d 846, 847 (Tex.App.—Amarillo 1989, writ denied).[5] Moreover, in its response, NGC did not contend that it had not ceased delivering gas to Midgard or that a material issue of fact existed as

to Midgard's contract claim, except excuse, which is discussed below.

By its pleadings, NGC did not raise any affirmative defenses or contend that its failure to continue gas deliveries was excused by reason of the force majeure provision or otherwise as required by Rule 94 of the Texas Rules of Civil Procedure. However, without any reference to the force majeure clause of the gas processing agreement, expressed or implied, NGC asserted in its response that:

> NGC did everything necessary to perform its contract with Midgard, but was prevented from performing by the tortious interference of Transok. This interference excuses NGC's non-performance, or entitles it to judgment over against Transok . . . .

Then, under the heading entitled "Grounds," NGC asserted that its performance was rendered impossible by Transok, excusing it from performance; however, paragraph 11.1 of the contract is not referenced, and under the heading "Disputed Facts," neither excuse nor impossibility of performance is discussed. Finally, by three paragraphs which follow the sub-heading "Force Majeure," which do not reference the force majeure provision of the contract or assert excuse or impossibility of performance, NGC responds to Transok's motion for summary judgment.

■ As earlier noted, issues not expressly presented to the trial court in writing shall not be considered on appeal as grounds for reversal and all theories in opposition to a motion for summary judgment must be presented in writing to the trial court. Indeed, Rule 166a(c) provides in part:

> Issues not *expressly* presented to the trial court by written motion, answer, or

---

4.  Other undisputed facts related to the contract negotiations between NGC and Transok are also referenced in NGC's motion.

5.  NGC's assertions of undisputed facts in its motion for summary judgment against Tran-

sok may also be considered as admissions. *St. Paul Fire & Marine Insurance Co. v. Murphree,* 163 Tex. 534, 357 S.W.2d 744, 746 (1962).

other response *shall not* be considered on appeal as grounds for reversal.

(Emphasis added). Considering the absence of any pleading of any affirmative defenses of excuse, impossibility, force majeure, or otherwise, the failure of NGC to reference the force majeure paragraph of the contract in its response, and because the sole response to two separate motions resulted in uncertainty and non-specificity, we cannot hold that any issues were expressly presented to the trial court in writing as required by Rule 166a(c) to consider for reversal of the summary judgment. Moreover, even if such issues were raised, the mere pleading or assertion of defensive issues without presenting summary judgment evidence to support them is not sufficient to defeat an otherwise proper motion. *KPMG Peat Marwick v. Harrison County Housing,* 988 S.W.2d 746, 749–50 (Tex. 1999). Because NGC did not come forward with summary judgment evidence to raise a fact issue regarding its claimed defensive issues, it was not incumbent upon Midgard to reply to NGC's response. *Stiles v. Resolution Trust Corporation,* 867 S.W.2d 24, 26 (Tex.1993). NGC's second issue is overruled.

■ By its first issue, NGC asserts the trial court erred in awarding Midgard breach of contract damages where the affidavit of a consultant and former employee of Midgard was the only summary judgment evidence of Midgard's damages. By three sub-issues, NGC contends the affidavit was insufficient because (A) it failed to provide the records on which the affiant allegedly relied in formulating his opinions, (B) even if the affidavit was not fatally defective, lost profits are innately speculative—making summary judgment improper, and (C) the affidavit failed to meet the requirements for summary judgment testimony of an interested witness. Because we agree with sub-issue A, we sustain issue two, but do not express any opinion on sub-issues B and C.

By its motion for partial summary judgment, Midgard contended that NGC breached the gas processing agreement by delivering insufficient gas, and then no gas to its plant, causing damages in the amount of $3,664,965.47. In support of its ground, Midgard attached the affidavit of William A. Vandivere, who was manager of Gas Administration for Midgard at that time. The affidavit states in pertinent part:

> I have been furnished *certain information* provided in this lawsuit by the Defendant, Transok, setting out all the gas production into the Muletrain and Moorewood East Laterals of the facility referred to in the Agreement as the NGC Anadarko System from April 1993, through November 1996. Such information was provided to Plaintiff in this case on a computer disk which was delivered to me on February 25, 1998, by Midgard's attorney, Harlow Sprouse, and used by me and employees under my direct supervision in arriving at the conclusions stated in this Affidavit. Such information is the kind of information on which experts in my field commonly rely to determine gains, losses, or damages from processing or failing to process gas or liquids.

(Emphasis added).

■ NGC contends the affidavit is fatally defective and cannot support the damage award because the information contained in the computer disk which was the basis of the damage calculation and opinion of the affiant, was not attached to the summary judgment motion as required by Rule 166a(f) of the Texas Rules of Civil Procedure.[6] Moreover, the record does not establish that the information contained on the computer disk or the disk itself was otherwise provided to NGC, and Midgard does not contend that it was provided to NGC. Instead, relying on *Youngstown Sheet & Tube Co. v. Penn,*

---

**6.** Rule 166a(f) provides in part, "[s]worn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith."

363 S.W.2d 230, 234 (Tex.1962), Midgard asserts that the failure to attach the disk or a transcription of the information contained on the disk is a "formal" and not a "substantive" defect, and because NGC did not present its objection to the trial court in writing and obtain a ruling, NGC did not preserve the objection for our review. We disagree.

After *Youngstown,* the question of substantive defects in summary judgment affidavits was considered in *Landscape Design & Construction, Inc. v. Warren,* 566 S.W.2d 66, 67 (Tex.Civ.App.—Dallas 1978, no writ).[7] In *Ceballos v. El Paso Health Care Systems,* 881 S.W.2d 439, 444–45 (Tex.App.—El Paso 1994, writ denied), the court held that the failure to attach sworn or certified copies of a medical chart or other record referred to in affidavits of a doctor and nurse constituted a defect in substance. Then, in *Rodriquez v. Texas Farmers Ins. Co.,* 903 S.W.2d 499, 506 (Tex.App.—Amarillo 1995, writ denied), we held that the failure to attach copies of documents relied upon in the formation of an opinion was a fatal defect in the substance of an affidavit which could be raised for the first time on appeal. In so holding, we noted that without a consideration of the absent documents, there was no way to determine which portion of the documents the affiant relied upon in expressing his opinion. Moreover, the subject affidavit does not identify the "certain information" which affiant states was provided and used to arrive at the conclusions stated in his affidavit. Where an affidavit adequately identifies and describes a specific governmental report or record of gas production and transmission and is readily accessible to NGC, or which NGC could obtain in the regular course of its business, then the failure to attach the documents to the affidavit may not be a defect in substance. However, because that question is not presented in this record, we need not consider it. Accordingly, following our decision in

*Rodriquez,* we sustain NGC's sub-issue A of issue two. Because our disposition of sub-issue A requires that we reverse that portion of the judgment awarding damages to Midgard and remand a portion of this cause, our consideration of issues three and four is pretermitted for the reason that consideration of those issues would amount to an advisory opinion. *Maranatha Temple v. Enterprise Products,* 833 S.W.2d 736, 742 (Tex.App.—Houston [1st Dist.] 1992, writ denied).

Accordingly, we reverse that portion of the trial court's judgment that Midgard recover $3,664,965.47, plus interest in the amount of $1,557,597.80, and attorney's fees in the amount of $134,307.25, from NGC, and remand the cause to the trial court for further proceedings to determine Midgard's damages for its breach of contract claim, attorney's fees, interest, and costs of court; and affirm that portion of the judgment rendering partial summary judgment in favor of Midgard on NGC's contract liability.

### ON MOTION FOR REHEARING

By its motion for rehearing, Midgard contends this Court erred by reversing the summary judgment that it recover damages against NGC, and by its motion for rehearing, NGC requests we modify our prior opinion to reverse and remand the entire judgment to the trial court for trial on the merits and tax all costs against Midgard. Remaining convinced that our reversal of the summary judgment was proper, we overrule Midgard's motion for rehearing, grant NGC's motion with the following additional comments, and withdraw our judgment dated October 22, 1999.

■ Midgard contends we erred in holding that the affidavit of William A. Vandivere, which set out Midgard's damages, was fatally defective, and that because the defect was substantive, it could be considered for the first time on appeal.

7.  *See Mathis v. Bocell,* 982 S.W.2d 52, 59–60 (Tex.App.—Houston [1st Dist.]1998, no writ) for a discussion of conflicting decisions by courts of appeals.

Midgard relies on *Youngstown Sheet & Tube Co. v. Penn,* 363 S.W.2d 230 (Tex. 1962), in support of its position. Although *Youngstown* does support Midgard's contention to the extent that the affidavit is based upon Midgard's records, it does not support Midgard's contention regarding the disk and hearsay information provided by Transok. As noted in *Youngstown,* hearsay statements in affidavits may not be made the basis of a summary judgment, *id. at 233,* and do not require the adverse party to contravene the allegations in the motion. *Box v. Bates,* 162 Tex. 184, 346 S.W.2d 317, 319 (1961).

Notwithstanding our holding in *Rodriquez v. Texas Farmers Ins. Co.,* 903 S.W.2d 499, 506 (Tex.App.—Amarillo 1995, writ denied), Midgard asserts the defect is not substantive, but is a defect in form only, which may not be considered on appeal unless specifically pointed out in the trial court under Rule 166a(f) of the Texas Rules of Civil Procedure. Because the rule does not define a defect in form, we look to case law for guidance. In *Laman v. Big Spring State Hospital,* 970 S.W.2d 670, 672 (Tex.App.—Eastland 1998, pet. denied), in reversing a summary judgment, the court held that even though the motion for summary judgment was supported by statements acknowledged before a notary public, because they did not contain proper jurats they were substantively defective and the objection could be raised for the first time on appeal. *See generally Perkins v. Crittenden,* 462 S.W.2d 565, 568 (Tex.1970) (holding that a jurat is not the same as an acknowledgment). Similarly, in *Ramirez v. Transcontinental Ins. Co.,* 881 S.W.2d 818, 829 (Tex.App.—Houston [14th Dist.] 1994, writ denied), the court held that an objection to an affidavit on grounds that it states only a legal conclusion is one that relates to a defect of substance. Finding these cases instructive, we hold the defect in Vandivere's affidavit is one of substance that can be considered for the first time on appeal. ■ Moreover, because Midgard's motion for summary judgment must stand

on its own merits, the failure of NGC to respond cannot supply by default any proof essential for Midgard to establish its entitlement to summary judgment. *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 678 (Tex.1979). Affidavits are insufficient unless they contain allegations that are direct and unequivocal and perjury can be assigned upon them. *Brownlee v. Brownlee,* 665 S.W.2d 111, 112 (Tex.1984). Further, conclusions made by an expert in an affidavit are insufficient to support summary judgment. *Anderson v. Snider,* 808 S.W.2d 54, 55 (Tex.1991). Among other things, Rule 166a(f) requires that affidavits be made on personal knowledge and must show that the affiant is competent to testify to the matters stated therein. For these reasons, and because hearsay statements do not constitute summary judgment proof, *Lopez v. Hink,* 757 S.W.2d 449, 451 (Tex.App.—Houston [14th Dist.], 1988, no writ), the portions of Vandivere's affidavit based upon the information contained in the disk provided by Transok cannot support summary judgment for any specific amount of damages. Midgard's motion for rehearing is overruled.

Relying on Rule 44.1(b) of the Texas Rules of Appellate Procedure, NGC urges that because the damages are unliquidated and NGC contested liability, we should correct our opinion and reverse and remand the cause on all issues, including liability. Agreeing, we grant NGC's motion for rehearing. Although Midgard's claim may ultimately constitute "liquidated" damages as defined in *Ortiz Oil Co. v. Geyer,* 138 Tex. 373, 159 S.W.2d 494, 497 (1942), because Midgard does not contend in its response to NGC's motion for rehearing that its claim is liquidated, the judgment of the trial court is reversed and the cause remanded for trial on all issues. Accordingly, our judgment dated October 22, 1999 is hereby withdrawn.